# EXHIBIT  C

Name  Justino Vivar

Address  P.O.Box 689-YW-134-up

Soledad, Ca. 93960

CDC or ID Number  C-87891

F I L E D
Clerk of the Superior Court

DEC 2 0 2005

BY: J. Kreca

## CALIFORNIA SUPERIOR COURT

### FOR THE COUNTY OF SAN DIEGO

*(Court)*

Justino Vivar

Petitioner

vs.

A. Kane, Warden

Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No.  HCN 842

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

- [ ] A conviction                [X] Parole
- [ ] A sentence                  [ ] Credits
- [ ] Jail or prison conditions   [ ] Prison discipline
- [ ] Other (specify): _____

1. Your name:  **Justino Vivar**

2. Where are you incarcerated?  CORRECTIONAL TRAINING FACILITY LOCATED  AT SOLEDAD, CALIFORNIA

3. Why are you in custody?  [X] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Second degree  murder with the use of deadly weapon

   b. Penal or other code sections:  Penal Code Section 187 and  12022 (b)

   c. Name and location of sentencing or committing court:  San Diego County Superior Court

   d. Case number:  CR9113   *(handwritten: CRV9113)*

   e. Date convicted or committed:  About in May 1984 petitioner was convicted and about on that

   f. Date sentenced:  month he was sentenced

   g. Length of sentence:  15-years to life for the second degree murder plus 1 year for weapon use.

   h. When do you expect to be released?  No release date has been set.

   i. Were you represented by counsel in the trial court?  [X] Yes.  [ ] No.  If yes, state the attorney's name and address:

      A public Defender

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty   [X] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. **GROUNDS FOR RELIEF**

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

See attached hereto the grounds.

a. **Supporting facts:**

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

See attached hereto the facts

b. **Supporting cases, rules, or other authority (optional):**

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

7. **Ground 2** or **Ground** _____ *(if applicable)*:

See the grounds attached hereto

a. Supporting facts:

See the facts attached hereto

b. Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.    If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____

   b. Result: _____    c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised:  (1) _____

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

   _____

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.    If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    _____

    _____

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    _____No administrative  appeal is required. See Exhibit "A" on page 1_____

    _____

    _____

    _____

    _____

    _____

    _____

    b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.
       *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?   ☐ Yes. If yes, continue with number 13.   ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result: _____
_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
_____
_____

16. Are you presently represented by counsel?   ☐ Yes.   ☒ No. If yes, state the attorney's name and address, if known:
_____
_____

17. Do you have any petition, appeal, or other matter pending in any court?   ☐ Yes.   ☒ No. If yes, explain:
_____
_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    To file this petition

    This is the right court. In re Sena, 94 Cal. App.4th 836, 115 Cal. Rptr.2d 22 (2001)

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:   December 6, 2005                              ▶ _Justino Chirino_
                                                              (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]          **PETITION FOR WRIT OF HABEAS CORPUS**                    Page six of six

TABLE OF CONTENTS                    PAGE

## GROUND ONE

**UNDER FOUR** DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY
INTEREST IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS
CLAUSE TO THE UNITED STATES CONSTITUTION AND HE POSSESS PROTECTION
FROM THE DUE PROCESS CLAUSE ON ITS OWN FORCE.                    2

## GROUND TWO

UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES
CONSTITUTIONS PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE
ON PAROLE UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE WAS CONVICTED    7
AND THIS COURT SHALL REVIEW PETITIONER'S PETITION UNDER THE LAW THAT
WAS IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE.

## GROUND THREE

THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER
UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE    10
TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS FOERTEENTH AMENDMENT.

## GROUND FOUR

THE EXECUTIVE BRANCH OF GOVERNMENT HAS BREACHED THE PLEA AGREEMENT
PETITIONER ENTERED WITH THE PROSECUTOR AND HAS INCREASED PETITIONER'S    18
PUNISHMENT OF SECOND DEGREE MURDER TO A PUNISHMENT OF FIRST DEGREE MURDER.

## GROUND FIVE

DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED WITH FIRST DEGREE MURDER
UNDER PENAL CODE SECTION 189, BUT WAS CHARGED WITH SECOND DEGREE MURDER    23
UNDER PENAL CODE SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY WITHIN
THE EXECUTIVE BRANCH OF GIVERNMENT HAVE JURISDICTION TO INCREASE THE
PUNISHMENT OF PETITIONER'S SECOND DEGREE MURDER CONVICTION TO A
PUNISHMENT OF FIRST DEGREE MURDER CONVICTION.

TABLE OF CONTENTS                                    page

## GROUND SIX

WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT
MISAPPLIED IT'S OWN LAW AND CONSTRUED IT CONTRARY TO THE CLEARLY            27
ESTABLISHED UNITED STATES SUPREME COURT'S PRECEDENT IN VIOLATION OF
THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

## GROUND SEVEN

THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY
THAT IT TURNED THE INDETERMINATE SENTENCE LAW (ISL) INTO A VAGUE LAW IN     34
VIOLATION OF THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES
CONSTITUTIONS.

Justino Vivar C-87891
P.O.Box 689-YW-134-up
Soledad, Ca. 93960

F I L E D
Clerk of the Superior Court

DEC 2 0 2005

BY: J. Kreca

CALIFORNIA SUPERIOR COURT

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| <u>Justino Vivar</u> ) <br> Petitioner ) <br> ) <br> ) <br> vs. ) <br> ) <br> <u>A. Kane, Warden</u> ) <br> <u>Respondent</u> ) | PETITION FOR WRIT OF HABEAS <br> CORPUS |

    of 1984 petitioner was arrested and charged for the

crime of second degree murder under Penal Code   187.  Petitioner pleaded guilty

to the crime charged (second degree murder) and he was sentenced to 15-years to

life for the second degree murder conviction plus one year for the use of a

deadly weapon. See Exhibit "F" on page 1.

   On 1992 was petitioner's initial parole suitability hearing held.

Petitioner's Minimum Eligible Parole Release Date was set to be on 11-02-93.

See Exhibit "F" on page 1.

   Since the initial parole suitability hearing was held a series of parole

suitability hearings have been held without finding petitioner suitable for a

parole release date. The last parole suitability hearing was held on 05-12-05.

1                           GROUND    ONE

2

3    UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY INTEREST

4    IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS CLAUSE TO THE
     UNITED STATES CONSTITUTION AND HE POSSESS PROTECTION FROM THE DUE PROCESS
5    CLAUSE ON ITS OWN FORCE.

6

7    **First.**  The California Supreme Court held that prisoners possess a protected

8    liberty interest in connection with parole decisions rendered by the Board, that

9    it would be anomalous to conclude that they possess no comparable interest when

10   such decisions are reviewed by the Governor, where such review must be based upon

11   the same factors considered by the Board.  That under California law, this liberty

12   interest underlying a Governor's parole review decisions is protected by the Due

13   process of law. In re Rosenkrantz, 29 Cal. 4th 616, 660-661, 664, 128 Cal. Rptr. 2d

14   104, 143-144, 146 (Cal. 2002).

15   In Vitek v. Jones, 445 U.S. 480, 488-489, 100 S. CT. 1254, 1261 (1980) the Court

16   held, "Once a State has granted prisoners a liberty interest, we held that due pro-

17   cess protection are necessary "to insure that the State-created right is not arbitra-

18   rily abrogated." See also Wolff v. McDonnell, 418 U.S. 539, 557. 94 S.Ct. 2963, 2975,

19   41 L. Ed.2d 935 (1974); Meachum v. Fano, 427 U.S. 215, 226, 96 S. Ct. 2532, 2539

20   (1976); Dent v. West Virginia, 129 U.S. 114, 123, 9 S. CT. 231, 233, 32 L. Ed. 623

21   (1889).

22   Therefore, under this approach petitioner possess a protected liberty interest

23   conferred to him by the State of California on parole suitability decisions and it

24   is protected by the Due Process Clause to the United States Constitution.

25

26

27

28

                                          2

1    **Second.** Petitioner possess protected liberty interest based on the nature of the

2    interest he has been deprived.

3    In Sandin v. Conner, 515 U.S. 472, 480-484, 115 S. Ct. 2293, 2299-2300, fn. 5,

4    132 L. Ed.2d 418 (1995) the Court held that the protected liberty interest inquiry

5    shall not be focused on the language of the regulation but on the nature of the

6    deprivation. See also Board of Regents of State Colleges v. Roth, 408 U. S. 564,

7    570-571, 92 S. CT. 2701, 2705-2706 (1972); Meachum v. Fano, supra, 427 U.S. 215, 224,

8    96 S. CT. 2532, 2538.

9    In Hewitt v. Hlms, 459 U.S. 460, 470, 103 S. Ct. 864, 870 (1983) the Court found

10   protected liberty interest in an administrative segregation issue even when the Court

11   held that, "The deprivations imposed in the course of the daily operations of an

12   institution are likely to be **minor** when compared to the release from custody at

13   issue in parole decisions and good time credits."

14   In Board od Regents of State Colleges v. Roth, supra, 408 U.S. at 571, 92 S. CT.

15   at 2706 the Court held that, "Liberty" and "Property" are broad and majestic terms.

16   that they are among the "[g]reat[constitutional] concepts.

17   Therefore, on the nature of the deprivation to be released from custody in parole

18   decisions petitioner possess protected liberty interest.

19   In Sandin v. Conner, supra, 515 U.S. at 480-484, 115 S. CT. at 2299-2300, fn. 5

20   the Court overruled Hewitt v. Helms, supra, 459 U.S. 460, 103 S. CT. 864 on the

21   ground that protected liberty interest inquiry shall not be focused on the language

22   of the regulation.

23   Contrary to the clearly established law a United States District Court in Sass v.

24   Cal. Bd. of Prison Terms, 376 F. Supp.2d 975 (E.D. Cal. 2005) held that we (prisoners)

25   don't have protected liberty interest on parole suitability decisions protected by

26   the Due Process Clause to the United States constitution.

27

28

1   In Sass the Court contrary to the claerly established law by the United States

2   Supreme Court focused on the mandatory language of the statute rather than on the

3   nature of the deprivation.

4   But lets assume for purpose of argument that the inquiry shall be focused on the

5   mandatory language of the statute, the decision in Sass is still contrary to the

6   United States Supreme Court's clearly established law.

7   The inquiry on the language of the statute not only shall be focused on the manda-

8   tory language, but also on the conditions imposed to the inmates. See Board of

9   Pardons v. Allen (1987) 482 U.S. 369, 372-373, 376-377, 107 S. Ct. 2415, 2417-2418,

10   2420, fn. 9; Grenholtz v. Inmates of Nebraska Penal & Corr., 442 U.S. 1, 12, 99

11   S. Ct. 2100, 2106 (1979).

12   In California an inmate is not entitle to be released on parole unless he meet the

13   special conditions of parole. In re Rosenkrantz, 29 Cal. 4th 616, 656, 128 Cal. Rptr.

14   2d 104, 139; Title 15 of CCR § 2401, 2402, 2403.

15   In Sass the Court didn't consider the mandatory language of the regulations, it

16   didn't consider the conditions an inmate must meet before he be released on parole.

17   The Court **only** focused on the mandatory language of Penal Code § 3041. Therefore,

18   the decision of the Sass Court either under the rule of the nature of the depriva-

19   tion or under the rule of the mandatory language is unreasonable and contrary to the

20   clearly established law of the United States Supreme Court.

21   The Court only needs to read Board of Pardons v. Allen, supra, 482 U.S. 369; and

22   Greenhltz v. Inmates of Nebraska Pen. & Corr. , supra, 442 U.S. 1 and compare the

23   statutes **on** Montana and Nebraska with    the statute of California to conclude that

24   petitioner possess protected liberty interest because the statutes in the three

25   states are indistiguishable.

26   In Greenholtz and Board of Pardons v. Allen the Court made its own independent

27   interpretation of the State Statutes.

28

4

1    Therefore, the law requires the Federal Court to make its own interpretation of

2    Penal Code § 3041 independent from the interpretation of the State Court. Willams v.

3    Taylor, 529 U.S. 362, 378-379, 384, 389, 402, 411, 120 S. CT. 1495, 1505, 1508, 1511,

4    1517, 1522 (2000).

5      Petitioner submit to this Court that he possess protected liberty interest in

6     Parole suitability decisions protected by the Due Process Clause to the United

7    States Constitution.

8

9      **Third.**  When the State misapplied its own law it creates a protected liberty

10     interest reviewable in habeas corpus petition. Hicks v. Oklahoma (1980) 447 U.S.

11    343, 346, 100 S. Ct. 2227, 2229, 65 L.Ed.2d 175; Ballard v. Estelle, 937 F. 2d. 453,

12    546  (9th Cir. 1991)

13    For the reasons state in  this petition  the State of California has misapplied

14    its own law. It Misapplied its own law when it construed Penal Code § 3041, and it

15    has misapplied its own law on parole suitability decisions. **See the grounds raised**

16    **in this petition.**

17      **Four.**   Petitioner possess protected liberty interest because he has been punished

18    in excess of the time authorized by the statutory law for the crime he was convicted.

19    Hicks v. Oklahoma, supra, 447 U.S. 343, 346, 100 S. CT. at 2229; Whalen v. United

20    States, 445 U.S. 684, 63 I.Ed.2d 715, 100 S. Ct. 1432, fn. 4 (1980).

21      The United States Supreme Court requires lines between the sentences when the crime

22    is divided into degrees. Solem v. Helm, 77 L. Ed.2d 637, 652-653 (1983).

23      In California the lines are the Matrices to set the base term. Title 15 of CCR §

24    2403 (b) and (c).

25      Petitioner has served a term in excess of the maximum term required by the Matrix

26    for the base term of second degree murder convictions. CCR § 2403 (c).

27

28

1    The law require some evidence to be on the record to support the decision. See

2    Sperintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 454-457, 105 S. Ct.

3    2768, 2773-2775 (1985); In re Rosenkrantz, supra, 29 Cal. 4th 616, 656-657, 128

4    Cal. Rptr.2d 104, 139-140.

5    The record is void of the some evidence required to hold petitioner in custody

6    in excess of the time required by the Matrix for the base term for second degree

7    murder convictions.

8    Due to the fact that petitioner has been punished in excess of the time author-

9    zed by the statutory law, he possess protection  from the due process clause on its

10   own force. Sandin v. Conner, supra, 515 U.S. 472, 115 S. CT. 2293, 2295; Wolff v.

11   McDonnell, supra, 418 U.S. 539, 555-556, 94 S. Ct. 2963, 2974-2975.

12

13   Therefore, petitioner submit to this Court that he possess protected liberty

14   interest in Parole Suitability Decisions and protection on its own force from  the

15   Due Process Clause to the United States Constitution because he has served a period

16   of time in excess of the time required by the State law for the crime he committed.

17

18

19   Because petitioner possess protected liberty interest under California and

20   United States Constitutions, his claims are reviewable under both constitutions.

21

22

23

24

25

26

27

28

6

**GROUND TWO**

UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES
CONSTITUTIONS PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE
ON PAROLE UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE WAS CONVICTED
AND THIS COURT SHALL REVIEW PETITIONER'S PETITION UNDER THE LAW THAT WAS
IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE.

The decision in In re Dannenberg,  34 Cal. 4th 1061, 23 Cal. Rptr.3d 417
(2005) could in violation of the retroactive law applied to petitioner because
" Retroactivity is properly treated as a threshold question, for, once a new
rule is applied to the defendant in the case announcing the rule, evenhanded
justice requires that it be applied retroactively to all who are similarly
situated." Teague v. Lane, 489 U.S. 288, 300, 109 S. Ct. 1061, 1070 (1989).

Some courts have relied in In re Dannenberg, supra, 34 Cal. 4th 1061, 23 Cal
Rptr.3d 417 to denied petitioners the relief they have sought. See In re DeLuna,
24 Cal. Rptr.3d 643, 649 (Cal. App. 6 Dist. 2005); Sass v. California Bd. of
Prison Terms, 376 F. Supp.2d 975, 981–983 (E.D.Cal. 2003).

However, because in Dannenberg the California Supreme Court changed the
Indeterminate Sentence Law (ISL) it cannot be applied retroactively to petitioner
without violating the retroactive law.

Relying in Dannenberg to denied petitioner the relief he seeks is contrary
to the clearly established law which mandates the courts to consider petitioner's
petition under the law that was in effect at the time he committed the offense
rather than applying the law of Dannenberg. Teague v. Lanes, supra, 489 U.S. 288,
305–308, 109 S. Ct. 1061, 1073–1074.

"When "issues of both retroactivity and application of constitutional
doctrine are raised" the retroactivity issue should be decided first."
Teague v. Lane, supra, 489 U.S. at 300, 109 S. Ct. at 1070.

7

1    At the time petitioner was convicted the law to consider prisoners to release on

2    parole was that:  One year previous to the prisoner's minimum term the BPT shall

3    meet with the prisoner for consideration of parole release date and shall normally

4    set the release date of every inmate at the initial parole suitability hearing and

5    that only individuals who were convicted for a specific category of extremely se-

6    rious offenses the Board may denied the prisoner's release date if the Board be-

7    lieve the prisoner would pose an unreasonable risk of danger to the community if

8    released from prison.  The Board further shall consider the circumstances provided

9    in the regulations to find the prisoner suitable for a parole release date and shall

10   set the base term according to the term schuduled on the Matrices for the setting of

11   the base term. Penal Code § 3041 (a) and (b); Title 15 of CCR § 2401, 2402, 2403;

12   In re Rosenkrantz, 80 Cal. App. 4th 409, 413, 424-426, 95 Cal. Rptr. 2d 279, 281,

13   290-292, fn. 1, fn. 16, and fn. 18 (2000); In re Ramirez, 114 Cal. Rptr. 2d 381, 389-

14   390, 393-398 (Cal. App. 1 Dist. 2001).

15   The decision of the California Court of Appeals is the authority in the absence of

16   a California Supreme Court decision on the issue. Kolender v. Lawson, 461 U.S. 352,

17   103 S. CT. 1855, fn. 6 (1983). Therefore, previous to the time California Supreme

18   Court construed Penal Code § 3041 in Dannenberg, the decision of the California

19   Court of Appelas was the authority in Parole decisions.

20   The California Supreme Court also had interpreted the ISL the same way the Courts

21   of Appeals interpreted it. See In re Standworth, 33 Cal.3d 176, 181-186, 187 Cal.

22   Rptr. 783, 786-787 (Cal. 1982). Under Standworth it is required the Board consider

23   all the factors to find the inmate suitable for a parole release date and to set the

24   base term according to the time prescribed in the Matrices and that only when the

25   inmate was convicted of first degree murder and for a specific category of extremely

26   serious offense the Board could set the base term beyond the term authorized by the

27   matrices. See Id. at 788.  See also In re Rosenkrantz, 29 Cal. 4th 616, 653-655,

28   682-684, 128 Cal. Rptr. 2d 104, 137-139, 161-162.

1    However, In re Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417 (2005) the

2    California Supreme Court changed the Indeterminate Sentence Law (ISL).

3    In Dannenberg the Court overruled the most of Penal Code § 3041 (a); it elimina-

4    ted from consideration to find the prisoners suitable for a parole release date the

5    factors and the Matrices to set the base term and it held that the Board can denied

6    to every prisoner their release date based on the commitment offense only.

7    The Court overruled the requirement that at the initial parole suitability hearing

8    the Board could denied the release date only to the individuals who were convicted

9    for a specific category of extremely serious offenses and it held that the Board

10   can deny to every prisoner their release date for the rest of their natural life

11   based on the commitment offense factor only and that the Board can increase the

12   crimes of second degree murder to crimes of first degree murder. In re Dannenberg,

13   123 Cal. Rptr. 3d 417, 431-434, 439-443, fn. 15 and fn. 16.

14   Therefore, the California Supreme Court changed the ISL when it construed Penal

15   Code § 3041 and Under the Doctrine of Bouie v. City of Columbia, 378 U.S. 347,

16   84 S. Ct. 1697 (1964); and Rogers v. Tennessee, 532 U.S. 451, 121 S. Ct. 1693

17   (2001) the way the Court construed Penal Code § 3041 cannot be applied to petitioner

18   and the prisoners similarly suitated without violating the retroactive doctrine.

19   In Bason v. Kentuckey, 476 U.S. 79, 106 S.Ct. 1712, 90 I. Ed. 2d 69 (1986) the

20   Court modified a portion of Swaim v. Alabama, 380 U.S. 202, 85 S. Ct. 824, 13 L.

21   Ed.2d 759 (1965) and the portion that was modified could not be applied retroacti-

22   vely on colateral review of convictions that became final before Batson was announ-

23   ced. See Teague v. Lane, 489 U.S. 288, 294-295, 109 S. Ct. 1061, 1065-1067 (1989).

24   In Teague v. Lane, 489 U.S. at 305-307, 109 S. CT. at 1073 the Court made it clear

25   that habeas corpus petitions shall be adjudicated by applying the law that was in

26   effect at the time the prisoner was convicted.  Therefore, petitioner's petition

27   shall be adjudicated by applying the law that was in effect at the time he committed

28   the offense rather than applying the Dannenberg law.

1                                    GROUND THREE

2

3       THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER

4       UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE

        TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS. 5TH, 6TH, AND 14TH AMEND.

5

6          In Title 15 of California Code of Regulations (CCR) Section 2402 are the

7       circumstances the Board shall consider to find prisoners unsuitable for a parole

8       release date or find them suitable.

9          In Title 15 of CCR 2402 (c) are the circumstances tending to show unsuitability.

10      CCR Sec. 2402 (c)(1). COMMITMENT OFFENSE. "The prisoner committed the offense in

11      an especially heinous, atrocious or cruel manner."

12      (A) Multiple victims were attacked, injured or killed in the same or separate

13           incidents.

14         The Board has found that there were two victims who were killed in the same

15      incident. See Exhibit "F" on pages 46-48.

16      However, petitioner was not present during killing of the second victim and the

17      prisoner so declared during the hearing. See Exhibit "F" on pages 30-40.

18         During his swear declaration petitioner's declaring that after the first victim

19      was killed he had left in one direction and his brother left in another direction.

20      That he eventually became aware through a friend that there was a second victim.

21      See petitioner's declaration at Exhibit "A" on pages 2-3.

22         Therefore, because petitioner was not present during the killing of the second

23      victim the board unreasonable has considered the killing of the second victim to

24      denied petitioner's release from costody and it cannot be some evidence to denied

25      him his release from custody.

26

27

28

                                          10

1    (B) "The offense was carried out in a dispassionate and calculated manner, such

2         as an execution-style murder."

3    The Board has found that the offense was carried out with a great amount of dis-

4    passion that it was calculated in that the prisoner kept the victim occupied in an

5    argument while his brother went into a tent to retrieve a machete to hit him with.

6    See Exhibit "F" on page 46.

7    In his declaration petitioner's declaring that he , his brother and other friends

8    were drinking celebrating the oncoming Ney Year that they were already drunk when

9    the victim and three other friends were coming from another farm to join them.

10    That before they arrived the victim shouted and petitioner's brother answered the

11    shout that everything was in a friendly manner. However, when the victim  and his

12    friends arrived where petitioner, his brother and other friends were, the victim in

13    an anger tone asked who had answered the shout. Petitioner's brother smiling answe-

14    red  he did. The victim then called names to petitioner's brother and tried to

15    physically attack him. Petitioner stepped on front of the victim trying to calm-

16    down him.  The victim was calmed down, but later he became very argumentative and

17    tried to physically attack petitioner's brother again. Petitioner again stepped on

18    front of the victim trying to again calm-down him. But this time the victim pulled

19    a knife and stabbed petitioner on the left forearm. Petitioner jumped backwards

20    and pulled his belt to defend himself from the thrusts of the victim who was trying

21    to stab petitioner again.

22    When petitioner's brother saw the victim had stabbed petitioner he retrieved a

23    machete to safe petitioner's life.  Petitioner and the victim engaged in a struggle

24    the victim trying to stab petitioner again and petitioner trying to take the knife

25    away from the victim.  Eventually with the help of his brother petitioner took

26    away the knife from the victim and stabbed him with it until the victim fell to the

27    ground.  See petitioner's declaration at Exhibit "A" on pages 2-3.

28

1    Therefore, the findings of the Board that the offense was carried out with

2    great amount of dispassion and that it was calculated is not supported by the

3    evidence.

4    "Dispassionate means 'free from emotion or prejudice; calm and impartial." In

5    re Rosenkrantz, 80 Cal. App. 4th 409, 95 Cal. Rptr.2d 279, fn. 13 (Cal. App. 2 Dist.

6    2000). N O RATIONAL PERSON COULD DESCRIBE THIS KILLING AS  CALM AND WITHOUT EMOTION.

7    Calculated means planned. In re Rosenkrantz, supra, at fn. 13.

8    A planned murder is a first degree murder. People v. Ceja, 4 Cal. 4th 1134, 1140,

9    17 Cal. Rptr.2d 375, 379 (Cal. 1993); People v. Proctor, 4 Cal. 4th 499, 528-529,

10    15 Cal. Rptr.2d 340, 355 (Cal. 1992).

11    Petitioner was not charged with first degree murder, he was not convicted of

12    first degree murder and no evidence support the elements of first degree murder

13    (deliberation and premeditation).  Therefore, the findings of the Board that peti-

14    tioner committed the offense with dispassion and in a calculated manner is not

15    supported by the evidence.  And the some evidence requirement to support the

16    denial of petitioner's release on parole is not on the record.

17

18    (C) "The victim was abused,defiled,  or mutilated during or after the offense."

19    The board found that the victim was abused, defiled, and mutilated during the

20    offense.

21    In support of this finding the board held: "It should be noted that the victim

22    had nine  stab wounds to his shest and throat and no less than 25 wounds inflicted

23    by the machete on the victim's arms, back, and head. A left ear was severed. And

     the blows were hit with such tremendous force that there was massive hemorrhaging

24    due to the external lacerations to the carotid artery, and a stab wound severing

25    the victim's aorta.  The victim, therefore, was mutilated during the offense."

     See Exhibit "F" on pages 46-47.

26

27

28

12

1    "Mutilation is interpreted to mean "distinct acts, apart from the killing,

2    specially performed to mutilate the victim's body." Richmond v. Lewis, 501 U.S.

3    40, 45, 113 S. Ct. 528, 533 (1992). The Board has not showed any evidence to

4    support that the mutilation it alleges was a distinct act apart from the killing.

5      The injuries inflicted to the victim were inflicted during the battle in the heat

6    of the battle.  None of the injuries inflicted to the victim were inflicted in cold

7    blood.  Petitioner acted in self-defense and the injuries to the victim does not

8    support any kind of first degree murder described in Penal Code Section 189. In In

9    re Dannenberg, supra, 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417, fn. 16 the Court held

10   that the Board can increase the crimes of second degree murder to the crime of

11   first degree murder if the crime was committed with deliberation and premeditation.

12   However, petitioner's crime cannot be increased from second degree murder conviction

13   to the higher crime of first degree murder because there is not evidence of premedi-

14   tation and deliberation.  The Board has been considering this static factor for the

15   last 13-years and if once it was some evidence to denied petitioner his release from

16   custody after using it for the last 13-years to denied him his release on parole it

17   cannot longer be considered to denied his release on parole without violating the

18   Due Process Clause. Biggs v. Terhune, 334 F. 3d 910, 917 (9th Cir. 2003); In re

19   Rosenkrantz, 29 Cal. 4th 616, 683-684, 128 Cal. Rptr.2d 104, 161-162 (Cal. 2002).

20

21   (D) "The offense was carried out in a manner which demonstrates an exceptionally

22   callous disregard for human suffering."

23     The Board has found that the offense was carried out in a manner that showed a

24   total and a callous disregard for human suffering. See Exhibit "F" on page 47.

25      This appears to refer to something akin to torture or that the victim suffered

26   much more than that which would be inherent in any killing. In re Rosenkrantz,

27   supra, 80 Cal. App. 4th 409, 95 Cal. Rptr.2d 279, fn. 13.  There is not evidence

28   of that in this case.

13

1    The cruelty circumstance is limited to situations where the suffering of the

2    victim was intended by or foreseeable to the killer. Walton v. Arizona, 497 U.S.

3    639, 654, 110 S. Ct. 3047, 3058 (1990). What these cases show is that torture,

4    cruel, and suffering have the same meaning. Therefore, the Board has been conside-

5    ring this factor twice it considered cruel and callous disregard for human suffe-

6    ring.   Callous disregard for human suffering requires the victim be tortured in

7    an act distinct and apart from the act of the killing. The Board has not showed

8    the victim was tortured in an act distinct from the act of the killing or that

9    during the killing of the victim petitioner prolonged his death inorder to torture

10   the victim.   Therefore, there is not the some evidence requirement in the record

11   to support the findings of the Board that the offense was carried out in a manner

12   that showed a total callous disregard for human suffering.

13

14   (E) "The motive for the crime is inexplicable or very trivial in relation to the

15       offense."

16   The Board has found that the motive for the crime was extremely trivial in

17   relation to the offense. See Exhibit "F" on page 47.

18   Petitioner's unpremeditated offense resulted from provocation on the part of

19   the victim. Though the provocation does not provide petitioner a legal defense,

20   the circumstances are similar to those which provide self-defense.

21   The victim was argumentative and wanted physically assault petitioner's brother

22   because petitioner's brother had answered a shout to the victim. The victim was

23   calmed-down but eventually he became again very argumentative and again he tried

24   to physically assault petitioner's brother. Petitioner tried to calm-down the

25   victim but the victim pulled a knife and stabbed petitioner on his left forearm.

26   The fact that the victim had stabbed petitioner on his left forearm and was trying

27   to stab petitioner multiple times triggered the fight and the killing of the

28   victim.

14

1    Topermit petitioner's motive to be used to deny him release would allow almost

2    any motive to be used to deny a prisoner release, making a mockery of the Legisla-

3    tive declaration that life prisoners are "normally" entitle to receive a release

4    date shortly before they first become eligible for parole. (Pen. Code Sec. 3041 (a).

5    In re Scott, 119 Cal. App. 4th 871, 894, 15 Cal. Rptr. 3d 32, 48 (2004).

6

7    For the foregoing reasons, the evidence does not show the presence of any of the

8    five factors the Board rested on in determining that petitioner committed his

9    offense "in an especially heinous, atrocious or cruel manner," and the evidence

10   does not show that the motive for the crime was extremely trivial in relation to

11   the offense.

12   CCR 2402 (c)(2). Previous Record of Violence. "The prisoner on previous occasions

13   inflicted or attempted to inflict serious injury on a victim, particularly if the
     prisoner demonstrated serious assaultive behavior at an early age."

14

15   Petitioner has not any previous record of violence. See Exhibit "F" on p. 15–16,
     48.

16

17   CCR 2402 (c) (5) Psychological Factors. The prisoner has a lengthy history of

18   severe mental problems related to the offense.

19   Petitioner has not any mental problems related to the offense. See Psycholocal

20   Report at Exhibit "E".

21   CCR 2402 (c)(6). Institutional Behavior. The prisoner has engaged in serious

22   misconduct in prison or jail.

23   Petitioner has not engaged in any serious misconduct in prison or in jail. See

24   Exhibit "E" on page 3; Exhibit "F" on page 48.

25

26

27

28

1    Under Title 15 of CCR Section 2402 (d) are the circumstances tending to show

2    suitability.

3    (1) NO JUVENILE RECORD.

4      Petitioner has not juvenile record. See Exhibit "F" on p. 48.

5      CCR 2402 (d)(7). Understanding and Plans for future. The prisoner has made realis-

6    tic plans for release or has developed marketable skills that can be put to use

7    upon release.

8      The Panel thought petitioner has not a solid job offer. The panel further found

9    that petitioner does have good family support who is willing to set him up with

10   hpusing, transportation, food and clothing and with a job either here in the

11   United States or in Mexico when he be paroled. See Exhibit "F" on p. 49.

12

13     Contrary to the findings of the Board that petitioner has not solid job offer

14   petitioner does have solid job offers.

15     Petitioner completed vocational Paint and Decoration; Vocational Upholstery; and

16   he is a very good leatherworker. See Exhibit "C" and Exhibit "F" on pages 28, 50.

17   1. A relative of petitioner offers him a job in a Carpentry and in a Upholstery

18   factory. See Exhibit "B" on page 1.

19   2. A Petitioner's cousin offers petitioner a job delivering fruits in different

20   states of Mexico. See Exhibit "B" on page 2.

21   3. A petitioner's  brother offers to petitioner house and job working in agricul-

22   ture in the State of Oaxaca, Mexico. See Exhibit "B" on page 3.

23   4.A petitioner's brother in law who lives in California  offers to petitioner a

24   house to live in and economic help to start a small business. See Exhibit "B" p. 4.

25   5. A petitioner's niece offers him economic support to start a new life and start

26   a small Upholstery business in Chilapa De Diaz Oaxaca, Mexico. See Exh. "B" p. 5.

27   6. Two  Petitioner's friends offer him jobs. See Exhibit "B" on pages 6-7.

28

1    Therefore, The Board unreasonable has found that petitioner does not have a

2    solid job offer.

3    While in prison petitioner has developed marketable skills in vocationals to put

4    in use upon his release from custody and he has job offers and housing to live in

5    upon his release on parole. The rule only requires developed job skill or an offer

6    of job and a house to live in upon his release, however, petitioner has both. See

7    CCR Section 2402 (d)(7).

8    The Board has found that petitioner has not sufficiently participated in bene-

9    ficial Self-Help or Therapy Programs. See Exhibit "F" on page 48.

10   However, since 1988 petitioner has participated and he is a member of Alcoholics

11   Anonymous and he has participated in all Self-Help Programs available in this

12   Facility. See Exhibit "F" on page 50.

13

14   For the foregoing reasons the Board has not evidence to support its findings

15   that petitioner is not suitable for a parole release on parole and the Board

16   Capriciously and Arbitrarily has denied petitioner's release from custody in

17   violation of the Due Process Clause to the California and United States Consti-

18   tutions.

19

20   For the foregoing reasons petitioner requests to this Court his immediate

21   release from custody.

22

23

24

25

26

27

28

17

1                          GROUND FOUR

2

3      THE EXECUTIVE BRANCH OF GOVERNMENT HAS BREACHED THE PLEA AGREEMENT PETITIONER
       ENTERED WITH THE PROSECUTOR AND HAS INCREASED PETITIONER'S PUNISHMENT OF SECOND
4      DEGREE MURDER TO A PUNISHMENT OF  FIRST DEGREE MURDER. 5TH, 6TH, AND 14TH Amend.

5

6      The United States Supreme Court has recognized different degrees of Criminal

7      Culpability. Mullaney v. Wilbur, 421 U.S. 684, 697-698, 95 S. Ct. 1881, 1889 (1975);

8      Solem v. Helm, 77 L.Ed.2d 637, 651 (1983); Apprendi v. New Yersey, 120 S. Ct. 2348,

9      2360 (2000); Hamlin v. Michigan, 501 U.S. 957, 996, 111 S. Ct. 2680, 2702 (1991).

10     Apparently the principle of different degrees of criminal culpability is a

11     universally established principle that has been recognized since 1215 when the Magna

12     Carta was written. See Solem v. Helm, supra, 77 L.Ed. at 645, fn. 9.

13     The State of California also recognize the principle of "different degrees of

14     criminal culpability". The Legislature has enacted numerous statutes with different

15     degrees of criminal culpability.

16     Relevent in this issue is Penal Code Section 189 for first degree murder. Sentence

17     are 25-years tolife, life without the possibility of parole and death penalty.

18     Penal Code Section 187 for second degree murder. Sentence 15-years to life. See

19     Penal Code Section 190; People v. Robetson, 17 Cal. Rptr.3d 604, 610 (Cal. 2004);

20     Second Degree Murder and manslaughter are lesser included offenses of first degree

21     murder. People v. Stears, 92 Cal. Rptr. 69, 14 Cal. App.3d 178 (Cal. App. 2 Dist.

22     1971).

23     Lesser included offenses, mean lesser in terms of magnitude of punishment.

24     Schmuck v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L.Ed.2d 734 (1989);

25     Carter v. U.S. 530 U.S. 255, 147 L.Ed.2d 203, 120 S. Ct. 2159, fn. 2 (2000).

26     On April and May of 1984 petitioner pleaded guilty to second degree murder and

27     he was sentenced to 15-years to life plus one year for the use of deadly weapon.

28     See Exhibit "F" on page 1.

                                    18

1    Petitioner pleaded guilty with the expectation he will be deprived of his liberty

2   only to the extent established by the statutory law and the Board's regulations.

3   I.B.S. v. St. Cyr, 533 U.S. 289, at 316, 321-323, 121 S. Ct. 2271, 2288, 2291-2292,

4   (2001); Bowen v. Hood, 202 F.3d 1211, at 1220-1222 (9th Cir. 2000); Magaña-Pizano

5   v. I.N.S., 200 F.3d 603, 613 (9th Cir. 1999). However, the BPT has held petitioner

6   incarcerated beyond the term established by the statutes and regulations in viola-

7   tion of the Due Process Clause to California and United States Constitutions.

8   Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. 2227, 2229 (1980)

9    When petitioner pleaded guilty to second degree murder nobody told him that by

10   pleading guilty to second degree murder he will spend the rest of his life in prison.

11   Petitioner relied on the written law to plead guilty to second degree murder. The

12   written law at the time he committed the offense and pleaded guilty was that second

13   degree murder convictions were lesser included offenses of first degree murder. See

14   People v. Wickershaw, 32 Cal.3d 307, 326, 185 Cal. Rptr. 436, 446, 650 P.2d 311

15   (Cal. 1982); People v. Stearns, 92 Cal. Rptr. 69, 14 Cal. App.3d 178 (Cal. App. 2

16   Dist 1971); People v. Bradford, 939 P.2d 259, 65 Cal. Rptr.2d 145, 212, 15 Cal. 4th

17   1229, 1344 (Cal. 1997).

18    And the Matrix for the base term of second degree murder was: Minimum Term 10-

19   years and Maximum Term was 21-years. See CCR Section 2403 (c).

20    In the Matrix for the base term the credits petitioner has earned during two

21   decades under CCR 2410 are not included.

22    Without providing petitioner with the credits he is entitle he has served the

23   Maximum Term for second degree murder (21-years) according to the matrix for the

24   base term.

25    Now, petitioner is serving a punishment of first degree murder conviction. See

26   CCR 2403 (b).

27

28

1    The government of California has breached the plea agreement petitioner entered

2    with the prosecutor because petitioner already served the maximum term for secon

3    degree murder and now the government is punishing him with the punishment of the

4    greater offense of first degree murder.

5    "Plea agreements are contractual in nature and are measured by contractual law

6    standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003); United States v.

7    Anderson, 970 F.2d 602, 606 (9th Cir. 1992); People v. Shepard, 169 Cal. App.3d

8    580, 586, 215 Cal. Rptr. 401, 405 (1985); People v. Collins, 45 Cal. App. 4th 849,

9    869, 53 Cal. Rptr.2d 367, 378 (1996).

10    The Government is held "to the literal terms of the agreement." United States v. Baker,

11    25 F.3d 1452, 1458 (9th Cir. 1994); U.S. v. Schuman, 127 F.3d 815, 818 (9th Cir. 1997).

12    "Well established is the rule that the people will be held strictly to the terms of plea bargain made

13    with a criminally accused." People v. Nelson, 239 Cal. Rptr. 287, 289, 194 Cal. App.3d 77, 79 (Cal.

14    App. 1 Dist. 1987); In re Troglin, 51 Cal. App.3d 434, 438, 124 Cal. Rptr. 234, 237 (1975).

15    "When either the prosecution or the defendant is deprived of benefits for which

16    it has bargained, corresponding relief will lie from concessions made." People v.

17    Collins, 21 Cal.3d 208, 214, 145 Cal. Rptr. 686, 689 (Cal. 1978); People v. Collins,

18    supra, 45 Cal. App. 4th 849, 863, 53 Cal. Rptr.2d 367, 374.

19    The BPT is a party to the prosecutor's plea agreement. Therefore, the Board is

20    bound by the promise of the District Attorney. United States v. Anderson, supra,

21    970 F.2d 602, 605, fn. 5.

22    Also it is established that the State cannot with one hand give a benefit and

23    with the other take it away. Bowen v. Hood, supra, 202 F.3d at 1223; People v.

24    Harvey, 25 Cal.3d 754, 758, 159 Cal. Rptr. 696, 698-699 (Cal. 1979).

25    The Constitution does not take with one hand what it gives with the other.

26    Gideon v. Wainwright, 372 U.S. 339, 83 S. Ct. 792 (1963); Texas v. Cobb, 121 S.

27    Ct. 1335, 1347 (2001).

28

1    The Government of California with one hand (the prosecution) convict defendants

2    of second degree murder and with the other hand ( The Board of Prison Terms) it

3    increases the punishment of second degree murder convictions to the punishment

4    imposed on first degree murder convictions.

5    "When a plea rest in any significant degree on a promise or agreement of the

6    prosecutor, so that it can be said to be part of the inducement or consideration,

7    such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S.

8    Ct. 495, 499, 30 L.Ed.2d 427 (1971); United States v. Anderson, supra, 970 F.2d

9    602, 607; People v. Kaanehe, 19 Cal.3d 1, 13, 136 Cal. Rptr. 409, 417 (1977);

10   In re Jermine B., 69 Cal. App.4th 634, 639, 81 Cal. Rptr.2d 734, 737 (1999).

11           PETITIONER CARRIED OUT HIS PART OF THE PLEA BARGAIN.

12   "It is clear from Santobello ... that due respect for integrity of plea

13   bargains demands that once a defendant has carried out his part of the bargain the

14   government must fulfill its part." Brown v. Poole, supra, 337 F.3d 1155, 1159.

15   According to the Matrix petitioner already served the Maximum Term for the crime

16   he committed second degree murder; While in prison petitioner has developed marketa-

17   ble skills to put on use upon his release from custody; petitioner also has realis-

18   tic plans upon his release on parole and petitioner has not prior criminal record

19   and neither he has engaged in serious misconduct after he was convicted on the

20   current offense.  Therefore, petitioner has carried out his part of the plea

21   agreement and the Government of California shall be ordered to comply with its part

22   and release petitioner from custody.

23   The United States Supreme Court requires the courts to draw lines between the

24   sentences when the crimes are divided into degrees. Solem v. Helm, supra,

25   77 L.Ed.2d at 652-653.

26   The California Courts didn't draw lines between the sentences of the crimes

27   which are divided into degrees, but the Legislature commanded the BPT to draw those

28   lines. Penal Code Section 3041 (a).

1    The BPT drew lines between the sentences when the crime is divided into degrees.

2    The lines are the matrices to set the base term. Relevant to this issue are two

3    of them. See Title 15 of CCR 2403 (b) and (c).  The Matrices are codified guidelines.

4    In re Standworth, 33 Cal.3d 176, 181-184, 187 Cal. Rptr. 783, 786-788 (1982). Because

5    the matrices are codified guidelines they cannot be hollow guidelines they mean some-

6    thing.  Because petitioner has been in custody since April 4, 1984 he has served the

7    Maximum Term established by the  matrices for the base term (21-years).

8    The Board has not pointed to any evidence to hold petitioner incarcerated beyond

9    the time established in the matrix for the base term of second degree murder.

10   Petitioner is entitle to credits under CCR 2410. By providing petitioner with the

11   credits he is entitle he has served about 28-years in custody. This is a term equi-

12   valent to a term of first degree murder convictions. See CCR 2403 (b).

13   Under the clearly established law by the United States Supreme Court the punish-

14   ment of second degree murder cannot be increased to the punishment of first degree

15   murder crime because it violates the 5th, 6th, and 14th Amendments. It violates

16   petitioner's right to notice of the information of every essential elements for first

17   degree murder offense. Russell v. United States, 369 U.S. 749, 765, 8 L. Ed.2d 240,

18   251 (1962); Almendarez-Torres v. United States, 523 U.S. 224, 228, 118 S. Ct. 1219,

19   1223, 140 L.Ed.2d 350 (1998); It violates petitioner's right to be informed about the

20   nature of the charge against him. Henderson v. Morgan, 426 U.S. 637, 645, 49 L.Ed.2d

21   108, 114 (1976); It violates petitioner's right to be find guilty-in a jury trial-of

22   first degree murder beyond a reasonable doubt. Apprendi v. New Yersey, 120 S. Ct.

23   2348, 2356-2357 (2000) and by increasing petitioner's punishment of second degree

24   murder to a punishment of first degree murder the government of California has brea-

25   ched the plea agreement petitioner entered with the prosecutor. Santobello v. New

26   York,sypra, 404 U.S. at 262, 92 S. Ct. 445, 30 L.Ed.2d 427.

27   For the forgoing reasons petitioner requests his immediate release from custody.

28

22

1                                GROUND FIVE

2

3    DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED WITH FIRST DEGREE MURDER
4    UNDER PENAL CODE  189, BUT HE WAS CHARGED WITH SECOND DEGREE MURDER UNDER
     PENAL CODE SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY WITHIN THE
5    EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION TO INCREASE PETITIONER'S
6    PUNISHMENT OF SECOND DEGREE MURDER CONVICTION TO A PUNISHMENT OF FIRST
7    DEGREE MURDER CONVICTION.

8                                    "A"

9    Petitioner was charges with second degree murder under Penal Code Section 187.

10   None of the essential elements of first degree murder were on the information.

11   The division of a crime into degrees constitutes an exclusive Legislative function.

12   People v. Bright, 12 Cal.4th 652, 669-670, 49 Cal. Rptr.2d 732, 743 (Cal. 1996).

13   In California second degree murder is a lesser included offense of fist degree

14   murder. People v. Bradford, 15 Cal.4th 1229, 1344, 65 Cal. Rptr.2d 145, 212;

15   People v. Stearns, supra, 92 Cal. Rptr. 69, 14 Cal. App.3d 178.

16   Lesser included offenses mean lesser in terms of magnitude of punishment. Schmuck

17   v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L.Ed.2d 734 (1989); Carter v.

18   U.S. , 530 U.S. 255, 147 L.Ed.2d 203, 120 S. Ct. 2159, fn. 2 (2000).

19   The defendant cannot be punished for a   higher degree of the crime than the

20   degree specified. People v. Mikhail, 13 Cal. App. 4th 846, 856, 16 Cal. Rptr.2d 641,

21   647, (Cal. App. 4 Dist. 1993); Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. at

22   2229; Whalen v. United States, 445 U.S. 684, 100 S. Ct. 1432, fn. 4 (1980).

23   It is the function of the Legislature Branch to define crimes and prescribe

24   punishments. In re Lynch, 8 Cal.3d 410, 414, 105 Cal. Rptr. 217, 219 (1973);

25   Manduley v. Superior Court, 27 Cal.4th 537, 552, 117 Cal. Rptr.2d 168, 180 (2004);

26   Harmelin v. Michigan, 501 U.S. 957, 962, 964, 111 S. Ct. 2680, 2684-2686 (1991);

27   Rummel v. Estelle, 445 U.S. 263, 274, 100 S. Ct. 1133, 1139, 63 L.Ed.2d 382

28   (1980).

                                       23

1      Therefore, under this approach neither the California Courts nor anybody within

2      the executive branch of government have jurisdiction to increase the punishment

3      of second degree murder to the greater punishment of first degree murder. The

4      government of California has not pointed to any evidence to support the increasing

5      of petitioner's punishment of second degree murder to the higher punishment of

6      first degree murder.  Because the increasing of punishment is legislative in

7      nature, the executive branch of government lack jurisdiction to increase petitioner's

8      punishment.

9                                    "B"

10     THE GOVERNMENT OF CALIFORNIA FURTHER HAS NOT JURISDICTION TO INCREASE

11     PETITIONER'S PUNISHMENT BECAUSE HE WAS NOT CHARGED WITH THE CRIME OF FIRST

12     DEGREE MURDER AND NONE OF THE ELEMENTS OF FIRST DEGREE MURDER WERE ON THE

13     INFORMATION.

14       The California Supreme Court in In re Dannenberg, supra, 23 Cal.Rptr.3d 417,

15     fn. 16 held that the Board can increase the crimes of second degree murder to

16     the crimes of first degree murder if the prisoner committed the offense by

17     deliberation and premeditation. However, this holding does not applied to

18     petitioner because he didn't commit the crime by deliberation and premeditation

19     and he was never charged for the crime of first degree murder under Penal Code

20     Section 189.

21       The United States  Supreme Court has held:

22     "No person shall be required to answer for any of the higher crimes and the

23     Court cannot permit a defendant to be tried on charges that are not made in the
       indictment or information gainst him." Stirone v. United States, 361 U.S. 212,

24     217, 4 L.Ed.2d 252, 256, fn. 3 (1960).

25

26

27

28

1    "The indictment or information shall be a plain, concise and definitive

2    written statement of the essential facts constituting the offense charged."

3    "The indictment or information shall state for each count the official or
     customary citation of the statute, rule, regulation or other provision of the

4    law which the defendant is alleged therein to have violated." Russell v. United

5    States, 369 U.S. 749, 762-763, 8 L.Ed.2d 240, 250, 82 S. CT. 1038 (1962); United
     States v. Bailey, 444 U.S. 394, 414, 100 S. Ct. 624, 62 L.Ed.2d 515 (1980).

6

7    "An indictment must set forth each element of the crime it charges. Almendarez-
     Torres v. United States, 523 U.S. 224, 228, 118 S. CT. 1219, 1223, 140 L.Ed.2d

8    350 (1998); Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907,

9    41 L.Ed.2d 590 (1974); Russell v. United States, supra, 369 U.S. at 765,

10   8 L.Ed. 2d at 251.

11    "It is a settled rule that a bill of particulars cannot save an invalid

12   indictment and the trial court cannot amend a indictment or information.
     Russell v. United States, supra, 369 U.S. at 770-771, 8 L.Ed.2d 254-255.

13

14   Therefore, neither the bill of particulars nor the trial court's instructions to

15   the petit jury can be sufficient to charge petitioner with first degree murder or

16   to inform him regarding the essential elements of first degree murder charge. United

17   States v. Camp, 541 F.2d 737, 740 (8th Cir. 1976); U.S. v. Hooker, 841 F.2d 1225,

18   1227, 1232 (4th Cir. 1988).

19   When the essential elements are missing on the information the trial court lacks

20   jurisdiction to tried the defendant on that charge. U.S. v. Hooker, 841 F.2d at 1232.

21    It is well established that a plea of guilty cannot be voluntary in the sense that

22   it constitutes an intelligent admission that the accused committed the offense unless

23   the accused has received "real notice of the true nature of the charge against him,

24   the first and most universally recognized requirement of due process." Smith v.

25   O'Grady, 312 U.S. 329, 334, 61 S. Ct. 572, 574, 85 L.Ed. 859 (1941); Henderson v.

26   Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2257, 49 L.Ed.2d 108, 114 (1976);

27   Marshall v. Lonberger, 459 U.S. 422, 436, 103 S. Ct. 843, 852 (1983).

28

1     Because petitioner was not informed about the nature of the charge against him

2 (First Degree Murder) Henderson v. Morgan, supra, 426 U.S. 637, 96 S.Ct. 2253, 49

3 L. Ed. 2d 108, 114, fn. 13 the State of California is without jurisdiction to

4 increase his punishment of second degree murder to a punishment of first degree

5 murder.

6     The increasing of petitioner's punishment also violate Apprendi v. New Yersey,

7 120 S. Ct. 2348, 2355 (2000); Blakely v. Washington, 124 S. Ct. 2531 (2004) that

8 under the due process clause of the Fifth Amendment and the notice and jury

9 trial guarantees of the Sixth Amendment any fact that increases the maximum

10 penalty for a crime must be charged in an indictment, submitted to the jury, and

11 proven beyond a reasonable doubt." "The Fourteenth Amendment commands the same

12 answer in this case involving a State statute."

13

14     Because petitioner has been punished in excess of the time prescribed by the

15 statutory law in violation of the Due Process Clause to the California and United

16 States Constitutions, he requests his immediate release from custody.

17

18

19

20

21

22

23

24

25

26

27

28

1

GROUND SIX

2

3    WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT

4    MISAPPLIED IT'S OWN LAW AND CONSTRUED IT CONTRARY TO THE CLEARLY ESTABLISHED

UNITED STATES SUPREME COURT PRECEDENT IN VIOLATION OF DUE PROCESS CLAUSE

5    TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

6

7    When the California Supreme Court construed Penal Code Section 3041 it misapplied

8    its own law and "when the state misapplied its own law it creates a protected liberty

interest reviewable in Habeas Corpus Petition." Hicks v. Oklahoma, 447 U.S. 343, 346;

9

Ballard v. Estelle, 937 F.2d 453, 456 (9th Cir. 1991).

10

11    In re Dannenberg, 34 Cal. 4th 1061 the California Supreme Court construed Penal

12    Code Section 3041 in a way to evade consideration of constitutional rights by

13    federal courts of Parole Suitability Decisions.

14    "Federal Courts may not second-gues the State Court's construction of its own

15    state law unless "it appears that its interpretation is an obvious subterfuge to

evade consideration of federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691,

16

95 S. Ct. 1881, fn. 11, 44 L. Ed.2d 508 (1975); Rogers v. Tennessee, 532 U.S. 451,

17    457, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001); Hubbart v. Knapp, 379 F.3d 773,

18    780 (9th Cir. 2004).

19    The United States Supreme Court has held that "When a prison regulation or practi-

20    ce offends a fundamental constitutional guarantee, federal courts will discharge

their duty to protect constitutional rights." (Johnson v. Avery, 393 U.S. 483, 486,

21

89 S. Ct. 747, 749, 21 L.Ed.2d 718 (1969);  Procunier v. Martinez, 416 U.S. 396,

22    405-406, 94 S. Ct. 1800, 1807-1808 (1974).

23    In Dannenberg the Court stated that in 2001 the Legislature amended Penal Code

24    Section 3041 favorable to the prisoners who are serving life terms. That the 2001

25    amendment to Section 3041 (b) appears to assume the Board's present mode of procedu-

26    re.  That the Legislature has not disturbed the Board's interpretation of Section

27    3041.  In re Dannenberg, supra, 23 Cal. Rptr. 3d at 430-438.

28

1     Because the California Supreme Court assumed the Legislature wanted the Board's

2    present mode of procedure the Court construed Penal Code Section 3041 contrary to

3    the intent of the Legislature, contrary to the principles of statutory construction

4    and contrary to the clearly established law by the United States Supreme Court.

5    The California Supreme Court held that the BPT can denied to every prisoner who

6    are serving life terms their release on parole for the rest of their natural lives

7    based on the commitment offense factor only if the Board believe the prisoners are

8    risk to the public safety. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 431-432,

9    439-440, 442-443.

10    Previuos to the decision in Dannenberg the Board was denying parole release dates

11    to over than 99 percent of the inmates who were eligible for release on parole and

12    to those who the Board found suitable for a parole release date the Governor cance-

13    led their release date. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 448.

14    If previous to the Court's decision in Dannenberg, the Board and the Governor were

15    capriciously and arbitrarily denying almost to every inmate their release on parole

16    now when they don't have to consider the factor and the guidelines, but the commit-

17    ment offense factor to find the inmates suitable for a parole release date they are

18    going to be denying release on parole in a more capricious and arbitrary manner.

19    This holding of the California Supreme Court is contrary to the clearly establish-

20    ed law by the United States Supreme Court in that it has held:

21    "We have repeatedly hold that the Government's regulatory interest in community

22    safety can in appropriate circumstances, outweight an individual's liberty inte-

23    rest when the individual has been arrested for a specific category of extremely

     serious offenses." That "There is nothing inherently unttainable about a predic-

24    tion of future criminal conduct." U.S. v. Salerno, 481 U.S. 739, 748-751, 109

25    S. Ct. 2095, 2102-2104 (1987) and cases cited therein.

26

27

28

1    It is a well established principle of statutory construction that a court in

2    constructing a statute it should give significance to every word, phrase, sentence

3    and part of an act to ascertain the intent of the Legislature so as to effectuate

4    the purpose of the law. People v. Black, 32 Cal.3d 1, 5-6, 184 Cal. Rptr. 454, 455-

5    456, 648 P.2d 104; People v. Craft, supra, 41 Cal.3d 554, 559-560, 224 Cal. Rptr.

6    626, 629.

7    The California Supreme Court in excess of its jurisdiction failed to give signi-

8    ficance to the words and phrases of Penal Code Section 3041 (a) as it is required

9    by the State's Law when a statute is construed.

10    The words and phrases in Penal Code Section 3041 (a) cannot be regarded as mere

11    surplusage; They mean something. Carter v. U.S. 530 U.S. 255, 262, 120 S. Ct. 2159,

12    2165 (2000).

13    The federal Constitution protect the prisoner when the State misapplied its own

14    law. The clearly established law by the United States Supreme Court hold:

15    "State statutes or regulations can create a right triggering due process protection

16    to insure that the state created right is not arbitrarily abrogated." "The touchstone

17    of the due process is protection of individuals against arbitrary action of govern-

18    ment." (Dent v. West Virginia, 129 U.S. 114, 132, 9 S. Ct. 231, 233, 32 L.Ed. 623,

19    (1889).' Wolff v. McDonnell, 418 U.S. 539, 557-558, 94 S. Ct. 2963, 2975-2976

20    (1974); Meachum v. Fano, 427 U.S. 215, 225-226, 96 S.Ct. 2532, 2539 (1976).

21    The Court failed to give significance to the command of the Legislature which

22    require that "One year prior to the prisoners's minimum term  the Board shall

23    meet with the prisoner and shall normally set a parole release date as provided in

24    Penal Code Section 3041.5. See In re Ramirez, 114 Cal. Rptr.2d 381, 397 (1Dist 2001).

25

26

27

28

1    Penal Code Section 3041 (a) also command the Board to establish criteria for the

2    setting of Parole Release Dates and in doing so shall consider the number of victims

3    of the crime for which the prisoner was sentenced and other factors in mitigation

4    and aggravation of the crime. In re Seabock, 140 Cal. App.3d 29, 37-38, 189 Cal.

5    Rptr. 310, 315 (1983).

6        The Board established criteria for the setting of parole release dates. See

7    Title 15 of CCR Section 2400-2411.

8        The Board established matrices to set the base term. Title 15 of CCR Sec. 2403.

9        The Matrices to set the base term are codified guidelines. In re Standworth,

10    33 Cal. 3d 176, 182, 187 Cal. Rptr. 783, 787 (Cal. 1982); In re Seabock, supra,

11    140 Cal. App.3d at 40, 189 Cal. Rptr. at 317, fn. 9.

12        However, the California Supreme Court directed the Board to disregard the Matrices

13    to set the base term. In re Dannenberg, 23 Cal. Rptr.3d at 433 and fn. 15.

14        This holding of the California Supreme Court to eliminate from consideration the

15    matrices to set the base term is contrary to the United States Supreme Court

16    requirement that when the crime is divided into degrees the Court shall draw lines

17    between the sentences. Solem v. Helm, 77 L.Ed.2d at 652-653.

18        In Penal Code Section 3041 (a) the State Legislature commanded the Board to draw

19    the lines between the sentences (the matrices) as it is required by the United States

20    Supreme Court in Solem v. Helm. However, the California Supreme Court in excess of

21    its jurisdiction, contrary to the intent of the Legislature and contrary to the

22    clearly established law by the United States Supreme Court overruled the matrices.

23

24

25

26

27

28

1   Penal Code Section 3041 (a) and CCR 2401 require the Board to set the parole

2   release date in a manner that provides uniform term for offenses of similar gravi-

3   ty and magnitude with respect to the threat to the public. CCR 2402 and 2403 also

4   require the Board to consider the criteria to find the inmate suitable for a parole

5   release date and to set the base term. The regulations are commanded by Penal Code

6   Sec. 3041 (a). By  directing the Board to deny prisoners their release date based

7   on the commitment offense factor only the court indirectly is directing the Board

8   to disregard the criteria to find the inmate suitable for a parole release date.

9   This holding of the California Supreme Court is contrary to the command of the

10  Legislature in Penal Code Sec. 3041 (a) that the Board shall establish criteria to

11  find the inmate suitable for a parole release date and to set the base term.

12  The words and phrases in Penal Code Sec. 3041 (a); and the rules in Title 15 of

13  CCR 2400 to 2411 cannot be regarded as mere surplusage; They mean something. Carter

14  v. U.S., supra, 530 U.S. 255, 262, 120 S.Ct. 2159, 2165.

15  By disregarding the circumstances to find prisoners suitable for a parole release

16  date the Board is disregarding our good conduct in prison, the efforts we

17  have made to obtain our high school equivalent certificate, to complete vocationals

18  and self-help programs and the credits we have earned during two decades of parti-

19  cipation in the programs.  Everything has been but empty formulas of words.

20  This holding of the Court is contrary to the clearly established law which hold:

21  "The prevalent modern philosophy of penology is that the punishment shall fit

22  the offender and not merely the crime." (Williams v. New York, 337 U.S. 241,

    247-248, 69 S.Ct. 1079, 1083-1084, 93 L.Ed. 1337 (1949)." United States v. Grayson,

23  438 U.S. 41, 45, 98 S.Ct. 2110, 2113 (1978); In re Minnis, 7 Cal.3d 639, 644,

24  102 Cal. Rptr. 749, 752 (1972); In re Rodriguez, 14 Cal.3d 639, 650, 122 Cal. Rptr.

25  252, 560 (Cal. 1975).

26

27

28

1    "The decision of parole turns on a "discretionary assesment of a multiplicity

2    of imponderables, entitling primarily what a man is and what he may become

3    rather than simply what he has done." Greenholtz v. Inmates of Nebraska Penal

     & Corr., 442 U.S. 1, 10, 99 S. Ct. 2100, 2105 (1979); Board of Pardons v. Allen,

4    482 U.S. 369, 107 S. Ct. 2415, fn. (1987).

5

6    The Court further contrary to the law of statutory construction and in an

7    unreasonable manner considered the Legislative history of the ISL as well as the

8    circumstances of the enactment of the statute to determine the intent of the

9    Legislature. People v. Craft, supra, 41 Cal.3d at 560, 224 Cal. Rptr. at 629.

10    From 1975 to 1978 the Legislature made several amendments to the ISL. See In re

11    Williams, 53 Cal. App.3d 10, 15, 125 Cal. Rptr. 457, 460 (1975); In re Dannenberg,

12    23 Cal. Rptr.3d at 427, 435-437.

13    The Amendments to the ISL were made because the Board in an arbitrary manner was

14    imposing excessive punishments to the prisoners. See In re Minnis, 7 Cal.3d 639,

15    102 Cal. Rptr. 749 (1972); In re Rodriguez, 14 Cal.3d 639, 122 Cal. Rptr. 552 (1975);

16    In re Lynch, 8 Cal.3d 410, 105 Cal. Rptr. 217 (1972); In re Sturm, 11 Cal.3d 258,

17    113 Cal. Rptr. 361 (1974); In re Williams, 53 Cal. App.3d 10, 125 Cal. Rptr. 457,

18    (1976). In In re Dannenberg, supra, 23 Cal. Rptr.3d 435-436, 441-442 the California

19    Supreme Court concedes that previous to the amendments to the ISL the Board was

20    arbitrarily and capriciously imposing excessive punishments.

21    In order to prevent the Board from arbitrarily and capriciously denied prisoners

22    their release dates the Legislature commanded the Board to set criteria in order

23    to find the inmate suitable for a parole release date and guidelines to set the

24    base term. Penal Code Sec. 3041 (a).

25

26

27

28

1    Now the California Supreme Court no only failed to consider the history of the

2    ISL in a way to prevent the Board from arbitrarily applied  the law (fron capri-

3    ciously and arbitrarily denied us (prisoners) our release date on parole) but

4    it construed the ISL in a way that it is encouraging the Board to denied us our

5    release on parole in a more capriciously and arbitrarily manner than previous to

6    the amendments to the ISL.

7

8    For the foregoing reasons the construction of Penal Code Sec. 3041 in In re

9    Dannenberg 34 Cal. 4th 1061 shall be declared unconstitutional because the

10    construction of Penal Code Sec. 3041 is contrary to the statutory construction,

11    it is contrary to the Legislature's intent, it violates petitioner's Due Process

12    rights and it is contrary to the clearly established law by the United States

13    Supreme Court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                              GROUND SEVEN

2

3     THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY
      THAT IT TURNED THE ISL INTO A VAGUE LAW IN VIOLATION OF THE DUE PROCESS
4
      CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.
5

6     The State's vague law is reviewable by the federal courts.

7     "Where the statute or regulation is challenged as vague because individuals
      to whom it plainly applies simply cannot understand what is required of them
8
      and do not wish to forswear all activity arguably within the scope of the
9
      vague terms abstention is not required." Procunier v. Martinez, 416 U.S. 396,
10    94 S. Ct. 1800, fn. 5 (1974).

11                                   "A"

12      In Dannenberg the Court held that those inmates who believe their confinements

13    have become constitutionally excessive to take their claims to court and the court

14    will review them on proportionality grounds. Dennenberg, 23 Cal. Rptr.3d at 441-443.

15      However, the Court didn't state how much time is proportionate for a second

16      degree murder sentence (15-years to life sentence).

17    In Dannenber the Court repeatedly stated that inmates sentenced for a second degree

18    murder convictions are sentenced to serve life maximum terms. See In re Dannenberg,

19    supra, 23 Cal. Rptr.3d at 420-421, 429-432, 434, 436, 439.

20      The how the 15-years to life sentences can be disproportionate  when on the

21    Court's judgment every second degree murder sentence is a natural life maximum

22    sentence?

23      The principle of gross disproportionality only exist on death penalty sentences.

24    Harmelin v. Michigan, 501 U.S. 957, 995, 111 S. Ct. 2680, 2701-2702 (1991). But if

25    it exist it is applied only in the "exceedingly rare" and "extreme"  case. Lockyer

26    v. Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166, 1173 (2003); Harmelin v. Michigan,

27    supra, 501 U.S. 957, 963, 111 S. CT. 2680, 2685.

28

                                    34

1    Therefore, under the principle of disproportionality the sentence of an inmate

2    who was sentenced to 15-years to life for a second degree murder conviction will

3    be an exceedingly rare and extremely rare finding of disproportionality.

4    This holding of the California Supreme Court is contrary to the clearly establi-

5    shed law which hold: "The Government," regulatory interest in community safety can,

6    in appropriate circumstances, outweight an individual's liberty interest when the

7    individual has been arrested for a specific category of extremely serious offenses."

8    U.S. v. Salerno, supra, 481 U.S. 738, 748-750, 107 S. CT. 2095, 2102-2104, and

9    cases cited therein.

10    The United States Supreme Court held: "It would certainly be dangerous if the

11    Legislature could set a net large enough to catch all possible offenders, and

      leave it to the courts to step inside and say who could be rightfully detained,

12    and who should be set at large, this would, to some extent, substitute the

13    judicial for the Legislative department of government." Kolander v. Lawson, supra,

14    461 U.S. 352, 103 S. Ct. 1855, fn. 7; Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242,

      fn. 9 (1974).

15

16    The California Supreme Court did exactly that. The Court held that the BPT can

17    denied parole to every inmate on the commitment offense factor only and if the

18    inmate believe he has been retained beyond the constitution allows then to take his

19    claim to court and the court will review it on disproportionality grounds. In re

20    Dannenberg, supra, 23 Cal. Rptr. 3d at 441-443.

21    "A Statute which either forbids or requires the doing of an act in terms so

22    vague that men of common intelligence must necessarily guess at its meaning

      and differs as to its application, violates the first essential of the Due

23    Process of Law." Smith v. Goguen, supra, 415 U.S. 566, 94 S. CT. 1242, 39 L.

24    Ed.2d 605, fn. 8.

25    The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d at 421,

26    443 held that the Board can denied to prisoners our release on parole for the rest

27    of our natural life only by pointing to some evidence that the particular circums-

28    tances of the crime—circumstances beyond the minimum elements of the conviction-

35

1  indicate exceptional callousness and cruelty with trivial provocation, and those

2  suggested the inmate remains a danger to public safety.

3   The Court didn't say what are the circumstances beyond the minimum elements of

4  the prisoner's conviction the Board can consider to denied a prisoner his release

5  on parole for the rest of his natural life.

6   The Courts have recognized that all second degree murder by their nature involve

7  a disregard for the life of another. In re Rosenkrantz, 80 Cal. App. 4th 409,

8  95 Cal. Rptr.2d 279, fn. 13 (Cal. App. 2 Dist. 2000); "All second degree murders

9  by definition invoke some callousness——i.e., lack of emotion or symphathy, emotio-

10  nal insensitivity, indifference to the feelings and suffering of others." In re

11  Scott, 119 Cal. App. 4th 871, 891, 15 Cal. Rptr.3d 32, 45 (2004); A Florida Court

12  also recognize that all killings are atrocious." Proffitt v. Florida, 428 U.S. 242,

13  255, 96 S. Ct. 2960, 2968 (1976); "An ordinary person could honestly believe that

14  every unjustified, intentional taking of human life is "especially heinously,

15  outrageously or wantonly vile, horrible, inhuman." Godfrey v. Georgia, 442 U.S.

16  420, 428-429, 100 S. Ct. 1759, 1764-1765; Maynard v. Cartwright, 486 U.S. 356,

17  364, 108 S. Ct. 1853, 1859 (1988).

18   For the Members of the Board no matter how or why the murder occurred they always

19  find that the prisoner committed the crime in an especially cruel, or callous

20  manner," and that the crime was carried out in a way that "demonstrates an excep-

21  tionally callous disregard for human suffering" and that the motive for the crime

22  "was inexplicable or very trivial in relation to the offense." That the prisoner

23  needs therapy in order to face, discuss, understand and cope with stress in a

24  non-destructive manner. That until progress is made, the prisoner continues to be

25  unpredictable and a threat to others. See In re Dannenberg, supra, 23 Cal. Rptr.3d

26  at 423-424; In re Ramirz, 114 Cal. Rptr.2d 381, 388 (Cal. App. 1 Dist. 2001); In

27  re Rosenkrantz, 80 Cal. App. 4th 409, 418, 95 Cal. Rptr.2d 279, 296, fn. 10 and

28  fn. 14; In re Scott, 119 Cal. App. 4th 871, 883, 889, 15 Cal. Rptr.3d at 39, 44.

36

1    Therefore, no matter what are the circumstances of the crime the evidence shows

2    that the Board always has found and it will find in every murder crime- circumstan-

3    ces beyond the minimum elements of the crime-- and that the prisoner committed the

4    crime with exceptionally callousness and cruelty with trivial provocation.

5    Therfore, without guidelines to find the inmates suitable for a parole release

6    date and to set their base term the ISL is vague and the construction of Penal

7    Code Sec. 3041 in In re Dannenberg, 34 Cal. 4th 1061 shall be declared **void** by the

8    Court because it violates petitioner's Due Process Rights to the California and

9    United States Constitutions 5th, 6th, and 14th Amendments.

10

11    Due to the fact that petitioner was not charged with first degree murder under

12    Penal Code Sec. 189 neither the Court nor anybody within the executive branch of

13    Government have jurisdiction to increase petitioner's conviction of second degree

14    murder  to a conviction of first degree murder in that the elements of first degree

15    murder were not on the information. Stirone v. United States, 361 U.S. 212, 217,

16    4 L.Ed.2d 252, 256, fn. 3 (1960); Henderson v. Morgan, 426 U.S. 637, 645, L.Ed.ed

17    108, 114, 96 S.Ct. (1976); U.S. v. Hooker, 841 F.2d 1225, 1231-1232 (4th Cir. 1988);

18    Almendarez-Torres v. United States, 523 U.S. 224, 228, 118 S. Ct. 1219, 1223,

19    140 L. Ed. 2d 350 (1998).

20    Therefore, because petitioner was not charged with first degree murder the

21    elements of a first degree murder can not be considered to denied his release on

22    parole.

23    The consideration of the elements of first degree murder to denied petitioner his

24    release on parole also violates Apprendi v. New Yersey, 120 S.Ct. 2348, 2355 (2000);

25    and Blakely v. Washington, 124 S.Ct. 2531 (2004) that "Under the due process clause

26    of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amend-

27    ment, any fact that increases the Maximum penalty for a crime must be charged in an

28    indictment, submitted to the jury,and proven beyond a reasonable doubt."

37

1    Then, if the elements of a first degree murder charge cannot be considered by

2   the Board to denied petitioner his release on parole, what are the circumstances

3   to denied his release on parole for the rest of his natural life or to increase

4   his punishment of second degree murder conviction to a punishment of first degree

5   murder conviction?

6

7    The United States Supreme Court requires line between the sentences when the

8   crimes are divided into degrees. Solem v. Helm, 77 L.Ed.2d at 652-653.

9    The United States Supreme Court further has held:

10   "If arbitrary and  discriminatory enforcement is to be prevented laws must
     provide explicit standards for those who apply them." Grayned v. City of Rock-
11   ford, 408 U.S. 104, 108-109; Kolander v. Lawson, supra, 461 U.S. 352, 357-358,
12   103 S. Ct. 1855, 1858.

13   "Although, the doctrine focuses both on actual notice to the citizens and
     arbitrary enforcement, we have recognized recently that the more important
14   aspect of the vagueness doctrine "is not actual notice, but the other principle
15   element of the doctrine--the requirement that a legislature establish minimal
16   guidelines to govern law enforcement." (Smith v. Goguen, 415 U.S. 566, 574,
     94 S. Ct. 1242, 1247-1248, 39 L.Ed.2d 605 (1974).
17   "When the Legislature fails to provide such minimal guidelines, a criminal
18   statute may permit "a standardless sweep that allows policemen, prosecutors,
19   and juries to persue their personal predictions." Id., at 575, 94 S.Ct., at
     1248.) Kolander  v Lawson, 461 U.S. at 358, 103 S. Ct. at 1858.
20   "One of the premises of the void for vagueness doctrine is that an excessively
21   vague statute promotes arbitrary and discriminatory law enforcement by delega-
22   ting (too Much) power to the law-enforcement officers." Grayned v. City of
     Rockford, 408 U.S. 104, 108-109; Bear v. City of Wauwatosa, 716 F.2d 1117, 1124
23   (7th Cir. 1983); United Beverage Co. v. Ind. Alcoholic Beverage, 760 F.2d 155,
24   158 (7th Cir. 1985); Kolander v. Lawson, supra, 461 U.S. 352, 357, 103 S. Ct.
25   1855, 1858.

26

27

28

38

1   The California Legislature commanded the BPT to estanlish criteria and

2   guidelines to find the inmates suitable for parole release dates and to set the

3   base term. See Penal Code Sec. 3041; Title 15 of CCR Sec. 2401, 2402 and 2403.

4   Therefore, the Legislature established the guidelines required by the United

5   States Supreme Court to avoid vagueness and prevent the government from arbitra-

6   rily apply the law.

7   However, the California Supreme Court overruled most of Penal Code Sec. 3041 (a)

8   (It only left intact the requirement that one year previous to the inmate's mini-

9   mum term the Board consider the inmate for a parole release date) the rest was over-

10  ruled. The Court overruled the Matrices to set the base term. In re Dannenberg,

11  23 Cal. Rptr.3d 417, 433, fn. 15.  And by holding that the Board can denied to

12  every prisoner their release on parole based on the commitment offense factor only

13  (the Court impliedly is directing the Board to disregard the criteria to find the

14  prisoners suitable for a parole release date).  The Court further is directing the

15  Board to increase second degree murder crimes to first degree murder crimes. See

16  In re Dannenberg, 23 Cal. Rptr.3d 417, fn. 16.

17  Previous to the decision in Dannenberg the Board was denying parole to over than

18  99 percent of the inmates who were suitable for a parole release date and to those

19  who the Board found suitable for a parole release date the Governor cancelled their

20  release dates. See In re Dannenberg, 23 Cal. Rptr.3d at 448.

21  Therefore, if previous to the decision on Dannenberg—when the Board had to consi-

22  der the guidelines to find the inmate suitable for a parole release date-the Board

23  and the Governor were capriciously and arbitrarily denying prisoners their release

24  on parole now when they don't have to consider the guidelines they are going to

25  denied prisoners their release on parole in a more capricious ans arbitrary manner.

26

27

28

39

1    The law of vagueness require lines, guidelines and standards to prevent the

2    government from arbitrarily applied the law, however, the California Supreme

3    Court not only failed to provide guidelinas to avoid arbitrariness on parole

4    decisions, but it eliminated the minimum guidelines that were in effect which

5    guidelines were commanded by the Legislature.

6        Therefore, the California Supreme Court turned the ISL into a vague law more

7    vague than it was previous to its decision on Dannenberg, 34 Cal 4th 1061.

8

9        For the foregoing reasons this Court shall declare the Decision on Dannenberg,

10   unconstitutional on vagueness grounds an in violation of United States Constitution.

11   5th, 6th and 14th Amendments.

12

13

14

15   I, Justino Vivar, swear under penalty of perjury that the foregoing is true

16   and correct. Signed at Soledad, California on   December 6, 2005.

17

18                                                   _Justino Vivar_ (signature)

19                                                   Justino Vivar

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY MAIL

(C.C.P. §§1013A, 2015.5)

F I L E D
Clerk of the Superior Court

DEC 2 0 2005

BY: J. Kreca

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF MONTEREY )

I, _____Justino Vivar_____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I   am/am not   a party to the within action.

My   business/residence   address is P.O. Box 689, Soledad, California, 93960-0689.

On _____December 8, 2005_____, 20 _05____, I served the foregoing:

_____HABEAS CORPUS PETITION_____

_____

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

STATE OF CALIFORNIA SUPERIOR COURT          DEPARTMENT OF JUSTICE
FOR THE COUNTY OF SAN DIEGO                 Office of Attorney General
P.O.BOX  122724                             110 W.A. St., No. 1100
San Diego, Ca. 92112-2724                   P.O.Box 85266
                                            San Diego, Ca. 92186-5266

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this ___8th____ day of ____December of 2005_____, 20 _05____, at

Soledad, California.

/S/ _Justino Vivar_____