# EXHIBIT   E

ORIGINAL

Name  Justino Vivar

Address  P.O.BOX 689-YW-134-up

Soledad, Ca. 93960

CDC or ID Number  C-87891

FILED
Stephen M. Kelly, Clerk
APR 17 2006
Court of Appeal Fourth District

## CALIFORNIA COURT OF APPEALS

## FOURTH APPELLATE DISTRICT

*(Court)*

Justino Vivar
Petitioner

vs.

A.P. Kane, Warden
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No.  D 0 4 8 4 3 5

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]          **PETITION FOR WRIT OF HABEAS CORPUS**          Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

[X] A conviction          [X] Parole

[X] A sentence            [X] Credits

[ ] Jail or prison conditions    [ ] Prison discipline

[ ] Other (specify):  Parole suitability Hearing

1. Your name:  Justino Vivar

2. Where are you incarcerated?  Correctional Training Facility located at Soledad, California.

3. Why are you in custody?    [XX] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Second degree murder with the use of deadly weapon

   b. Penal or other code sections:  Penal Code Section 187 and P.C. 12022 (b)

   c. Name and location of sentencing or committing court:  San Diego County Superior Court

   d. Case number:  CR9113

   e. Date convicted or committed:  About on May of 1984 petitioner was convicted.

   f. Date sentenced:  About on May of 1984 he was sentenced

   g. Length of sentence:  15-years to life for the second degree murder plus one year for the weapon.

   h. When do you expect to be released?  No release date has been set yet.

   i. Were you represented by counsel in the trial court?    [XX] Yes.    [ ] No.  If yes, state the attorney's name and address:

      A Public Defender

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty  [X] Guilty  [ ] Nolo Contendere  [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

_See attached hereto Grounds, supporting facts and authorities_

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

7. **Ground 2 or Ground** _____ (*if applicable*):

See attached hereto Grounds, Supporting Facts and Authorities

a. Supporting facts:

b. Supporting cases, rules, or other authority:

8. Did you appeal from the conviction, sentence, or commitment?    ☐ Yes.  ☒ No.    If yes, give the following information:

  a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

  _____

  b.  Result: _____    c.  Date of decision: _____

  d.  Case number or citation of opinion, if known: _____

  e.  Issues raised:  (1) _____

       (2) _____

       (3) _____

  f.  Were you represented by counsel on appeal?    ☐ Yes.    ☐ No.  If yes, state the attorney's name and address, if known:

  _____

9.  Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.    If yes, give the following information:

  a.  Result: _____    b.  Date of decision: _____

  c.  Case number or citation of opinion, if known: _____

  d.  Issues raised:  (1) _____

       (2) _____

       (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal,
    explain why the claim was not made on appeal:

    _____

    _____

11. Administrative Review:

  a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust
     administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975)
     52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such
     review:

     No Administrative Appeal is required. See Exhibit "A" on page 1.

     _____

     _____

     _____

     _____

     _____

     _____

  b.  Did you seek the highest level of administrative review available?    ☐ Yes.    ☐ No.
      *Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]                **PETITION FOR WRIT OF HABEAS CORPUS**                **Page five of six**

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?   [ X ] Yes. If yes, continue with number 13.   [ ] No. If no, skip to number 15.

13. a.  (1) Name of court: <u>SAN DIEGO COUNTY SUPERIOR COURT</u>

   (2) Nature of proceeding (for example, "habeas corpus petition"):  *HABEAS CORPUS PETITION*

   (3) Issues raised: (a)  <u>Same Issues that I am raising in this petition. See Table of</u>

   (b)  <u>Contents.</u>

   (4) Result (Attach order or explain why unavailable):  <u>Petition was denied. See Exhibit "A" PP. 6-9.</u>

   (5) Date of decision:  <u>March 14, 2006</u>

   b.  (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a)  _____

   (b)  _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel?   [ ] Yes.   [XX] No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court?   [ ] Yes.   [XX] No.  If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:   April 12, 2006                           *Justino Vara*
                                        _____
                                              (SIGNATURE OF PETITIONER)

# TABLE OF CONTENTS

PAGE

## GROUND ONE

UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY          2
INTEREST IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS
CLAUSE TO THE UNITED STATES CONSTITUTION AND HE FURTHER POSSESS
PROTECTION FROM THE DUE PROCESS CLAUSE ON ITS OWN FORCE.

## GROUND TWO

UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITU-
TIONS PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE ON PAROLE          7
UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE AND
THIS COURT SHALL CONSIDER PETITIONER'S PETITION UNDER THE LAW THAT WAS
IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE.

## GROUND THREE

THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND          12
PETITIONER UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE
DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.
5TH, 6TH, AND 14TH AMENDMENTS.

## GROUND FOUR

THE EXECUTIVE BRANCH OF GOVERNMENT HAS BREACHED THE PLEA AGREEMENT          20
PETITIONER ENTERED WITH THE PROSECUTOR AND IT HAS INCREASED PETITIONER'S
PUNSIHMENT OF SECOND DEGREE MURDER TO THE PUNISHMENT OF FIRST DEGREE
MURDER. 5TH, 6TH, AND 14TH AMENDMENTS.

# TABLE OF CONTENTS

PAGE

## GROUND FIVE

BECAUSE THE DIVISION OF CRIMES INTO DEGREES CONSTITUTES AN EXCLUSIVE     25
LEGISLATIVE FUNCTION NEITHER THE STATE COURTS NOR ANYBODY WITHIN THE
EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION TO INCREASE PETITIONER'S
PUNISHMENT OF SECOND DEGREE MURDER TO THE PUNISHMENT OF THE GREATER
OFFENSE OF FIRST DEGREE MURDER.

## GROUND SIX

DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED WITH FIRST DEGREE     27
MURDER UNDER PENAL CODE SECTION 189, BUT HE WAS CHARGED WITH SECOND
DEGREE MURDER UNDER PENAL CODE SECTION 187 NEITHER THE STATE COURTS
NOR ANYBODY WITHIN THE EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION
TO INCREASE PETITIONER'S PUNISHMENT OF SECOND DEGREE MURDER CONVICTION
TO THE PUNISHMENT OF FIRST DEGREE MURDER CONVICTION.

## GROUND SEVEN

WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT     30
MISAPPLIED IT'S OWN LAW AND CONSTRUED IT IN CONTRAVENTION TO THE CLEARLY
ESTABLISHED LAW BY THE UNITED STATES SUPREME COURT AND IN VIOLATION OF
THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

## GROUND EIGHT

THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY     37
THAT IT TURNED THE INDETERMINATE SENTENCE LAW INTO A VAGUE AND DISCRIMINA-
TORY LAW IN VIOLATION OF THE ADA AND THE DUE PROCESS CLAUSE TO THE
CALIFORNIA AND UNITED STATES CONSTITUTIONS.

Justino Vivar C-87891
P.O.BOX 689-YW-134-up
Soledad, Ca. 93960

CALIFORNIA COURT OF APPEALS

FOURTH APPELLATE DISTRICT

|                          |   |                                |
|--------------------------|---|--------------------------------|
| Justino Vivar            | ) |                                |
| Petitioner               | ) | PETITION FOR WRIT OF HABEAS     |
|                          | ) | CORPUS                         |
| v.                       | ) |                                |
|                          | ) |                                |
| A. Kane, Warden          | ) |                                |
| Respondent               | ) |                                |

On 1984 petitioner was arrested and charged for the crime of second degree murder under Penal Code Section 187. Petitioner pleaded guilty to the crime he was charged (second degree murder) and he was sentenced to 15-years to life for the second degree murder conviction plus one year for the use of the deadly weapon. See Exhibit "F" on page one.

On 1992 was petitioner's initial parole suitability hearing held. Petitioner's MInimum Eligible Parole Release Date was set to be on 11-02-93. See Exhibit "F" on page one.

Since the Initial Parole Suitability Hearing was held a series of parole suitability hearings have been held without finding petitioner suitable for a parole release date. The last parole suitability hearing was held on 05-12-05.

(1)

GROUND   ONE

UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY
INTEREST IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS
CLAUSE TO THE UNITED STATES CONSTITUTION AND HE FUTHER POSSESS PROTECTION
FROM THE DUE PROCESS CLAUSE ON ITS OWN FORCE.

**First.**   The California Supreme Court held that prisoners possess a protected
liberty interest in connection with parole decisions rendered by the Board, that
it would be anomalous to conclude that they possess no comparable interest when
such decisions are reviewable by the Governor, where such review must be based
upon the same factors considered by the Board.   That under California law, this
liberty interest underlying a Governor's parole review decisions is protected by
the Due Process of law. See In re Rosenkrantz, 29 Cal. 4th 616, 660-661, 664,
128 Cal. Rptr.2d 104, 143-144, 146 (Cal. 2002).

In Vitek v. Jones, 445 U.S. 480, 488-489, 100 S. Ct. 1254, 1261 (1980) the
Court held, "Once a State has granted prisoners a liberty interest, we held that
due process protection are necessary "to insure that the State-created right is
not arbitrarily abrogated." See also Wolff v. McDonnell, 418 U.S. 539, 557,
94 S. Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); Meachum v. Fano, 427 U.S. 215, 226,
96 S. Ct. 2532, 2539 (1976); Dent v. West Virginia, 129 U.S. 114, 123, 9 S. Ct.
231, 233, 32 L. Ed. 623 (1889).


Therefore, under this approach petitioner possess a protected liberty interest
conferred to him by the State of California on parole suitability decisions and
it is protected by the Due Process Clause to the United States Constitution.

**Second.**  Petitioner possess protected liberty interest based on the nature of the interest he has been deprived.

In Sandin v. Conner, 515 U.S. 472, 480-484, 115 S. Ct. 2293, 2299-23000, fn. 5, 132 L. Ed. 2d 418 (1995) the Court held that the protected liberty interest inquiry shall not be focused on the language of the regulation but on the nature of the deprivation. See also Board of Regents v. State Colleges v. Roth, 408 U.S. 564, 570-571, 92 S. Ct. 2701, 2705-2706 (1972); Meachum v. Fano, supra, 427 U.S. 215, 224, 96 S. Ct. 2532, 2538.

In Hewitt v. Helms, 459 U.S. 460, 470, 103 S. Ct. 864, 870 (1983) the Court found protected liberty interest in an administrative segregation issue even when the Court held that, "The deprivations imposed in the course of the daily operations of an institution are likely to be minor when compared to the release from custody at issue in parole decisions and good time credits."

In Board of Regents of State Colleges v. Roth, supra, 408 U.S. at 571, 92 S. Ct. at 2706 the Court held that, "Liberty" and "Property" are broad and majestic terms that they are among the " great constitutional concepts." See also  Santosky v. Kramer, 455 U.S. 745, 755, 71 L.Ed. 2d 599, 607-608, 102 S. Ct. 1388 (1982).

Therefore, on the nature of the deprivation to be released from prison in parole decisions petitioner possess protected liberty interest.

In Sandin v. Conner, supra, 515 U.S. at 480-484, 115 S. Ct. at 2299-2300, fn. 5 the Court overruled Hewitt v. Helms, supra, 459 U.S. 460, 103 S. Ct. 864 on the grond that protected liberty interest inquiry shall not be focused on the language of the regulation.

Contrary to the clearly established law by the United States Supreme Court, a United States District Court in Sass v. Cal. Bd. of Prison Terms, 376 F. Supp.2d 975 (E.D. Cal. 2005) held that we (prisoners) don't have protected liberty interest on parole suitability decisions protected by the Due Process Clause to the United States Constitution.

1      In Sass the Court contrary to the clearly established law by the United States

2  Supreme Court focused on the mandatory language of the statute rather than on

3  the nature of the deprivation.

4      But, lets assume for purpose of argument that the inquiry shall be focused on

5  the mandatory language of the statute, the decision in Sass is still contrary to

6  the United States Supreme Court's clearly established law.

7      The inquiry on the language of the statute not only shall be focused on the

8  mandatory language, but also on the conditions imposed to the inmates and on the

9  mandatory language of the regulations. See Board of Pardons v. Allen (1987) 482

10  U.S. 369, 372-373, 376-377, 107 S. Ct. 2415, 2417-2418, 2420, and fn. 9; Greenholtz

11  v. Inmates of Nebraska Penal & Corr. 442 U.S. 1, 12, 99 S. Ct. 2100, 2106 (1979).

12      In California an inmate is not entitle to be released on parole unless he meet

13  the special conditions of parole. See In re Rosenkrantz, 29 Cal. 4th 616, 656,

14  128 Cal. Rptr. 2d 104, 139;  and Title 15 of CCR Sections 2401, 2402, 2403.

15      In Sass the Court didn't consider the mandatory language of the regulations, it

16  didn't consider the conditions an inmate must meet before he be released on parole.

17  The Court only focused on the mandatory language of Penal Code 3041. Therefore,

18  the decision of the Sass Court either under the rule of the nature of the depriva-

19  tion or under the rule of the mandatory language is unreasonable and contrary to

20  the clearly established law of the United States Supreme Court.

21    This Court only needs to read Board of Pardons v. Allen, supra, 482 U.S. 369; and

22  Greenholtz v. Inmates of Nebraska Pen. & Corr. , Supra, 442 U.S. 1 and compare

23  the statutes on Montana and Nebraska with the statute of California to conclude

24  that petitioner possess protected liberty interest in parole suitability decisions

25  because that statutes in the three states are indistinguishable.

26      In Greenholtz and Board of Pardons v. Allen the Court made its own independent

27  interpretation of the State Statutes.

28

1   Therefore, the law requires the Federal Courts to make their own interpretation

2   of Penal Code 3041 independent from the interpretation of the State Court. Williams

3   v. Taylor, 529 U.S. 362, 378-379, 384, 389, 402, 411, 120 S. Ct. 1495, 1505, 1508,

4   1511, 1527, 1522 (2000).

5   Although it is clearly established by the United States Supreme Court that the

6   "minimum requirements (on procedural due process) being a matter of federal law,

7   they are not diminished by the fact that the State may have specified its own

8   procedures that it may deem adequate for determining the preconditions to adverse

9   official action." Vitek v. Jones, supra, 445 U.S. 480, 491, 63 L.Ed.2d 552,

10  100 S. Ct. 1254; Santosky v. Kramer, supra, 455 U.S. 745, 755, 71 L.Ed. 2d 599,

11  602, 102 S. Ct. 1388, the Sass Court contrary to the clearly established law by

12  the United States Supreme Court based its decision on the **decision** of the Califor-

13  nia Supreme Court in In re Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr. 3d 417 (2005)

14  to conclude the we (inmates) in California don't possess federal protected liberty

15  interest in Parole decisions.

16

17  For the foregoing reasons petitioner submit to this court that he possess protec-

18  ted liberty interest in Parole Suitability Decisions protected by the Due Process

19  Clause to the United States Constitution.

20

21  **Third.**  When the State misapplied its own law it creates a protected liberty

22  interest reviewable in habeas corpus petition. Hicks v. Estelle, 937 F.2d 453,

23  546  (9th Cir. 1991).

24  For the reasons stated in this petition the State of California has misapplied

25  its own law.  It misapplied its own law when it construed Penal Code 3041, and it

26  has misapplied its own law on parole suitability decisions. See the grounds

27  raised in this petition.

28

1    **Four.**    Petitioner possess protected liberty interest because he has been puni-

2    shed in excess of the time authorized by the statutory law for the crime he was

3    convicted. Hicks v. Oklahoma, supra, 447 U.S. 343, 346, 100 S. Ct. at 2229; Whalen

4    v. United States, 445 U.S. 684, 63 L.Ed.2d 715, 100 S. Ct. 1432, fn. 4 (1980).

5    The United States Supreme Court requires lines between the sentences when the

6    crime is divided into degrees. Solem v. Helm, 77 L. Ed.2d 637, 652-653 (1983)

7    In California the lines are the Matrices to set the base term. Title 15 of CCR

8    Section 2403 (b), (c).

9    Petitioner has served a term in excess of the maximum term required by the Matrix

10    for the base term of second degree murder convictions. CCR 2403 (c).

11    The law requires some evidence to be on the record to support the decision. See

12    Superindent Mass. Corr. Institution v. Hill, 472 U.S. 445, 454-457, 105 S. Ct. 2768,

13    2773-2775 (1985); In re Rosenkrantz, supra, 29 Cal. 4th 616, 656-657, 128 Cal.

14    Rptr. 2d 104, 139-140.

15    The record is void of the some evidence required to denied petitioner his release

16    from custody and therefore, he has been retained in prison in excess of the time

17    required by the Matrix for the base term for second degree murder convictions.

18    Due to the fact that petitioner has been punished in excess of the time authori-

19    zed by the statutory law, he possess protection from the due process clause on its

20    own force. Sandin v. Conner, supra, 515 U.S. 472, 115 S. Ct. 2293, 2295; Wolff v.

21    McDonell, supra, 418 U.S. 539, 555-556, 94 S. Ct. 2963, 2974-2975.

22    Petitioner submit to this Court that he possess protected liberty interest in

23    Parole Suitability Decisions and protection on its own force from the Due Process

24    Clause to the United States Constitution because he has served a period of time in

25    excess of the time required by the Statutes and Regulations of the State of Calior-

26    nia for the crime he committed.

27    Therefore, petitioner's claims are reviewable under the California and United

28    States Constitutions because he possess protected liberty interest under both.

GROUND TWO

3   UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS
4   PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE ON PAROLE UNDER THE LAW
    THAT WAS IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE AND THIS COURT SHALL
5   REVIEW PETITIONER'S PETITION UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE
6   COMMITTED THE OFFENSE.

7   "When issues of both retroactivity and application of constitutional doctrine
    are raised the retroactivity issue should be decided first." Teague v. Lane,
8   (1989) 489 U.S. 288, 300, 109 S. Ct. 1061, 1070.

9   Petitioner has standing to challenge the unconstitutionality of Penal Code 3041

10  due to the way it was construed by the California Supreme Court in In re Dannenberg,

11  34 Cal. 4th 1061, 23 Cal. Rptr.3d 417 (Cal. 2005). (Dannenberg).

12  "Retroactivity is properly treated as a threshold question, for, once a new rule
    is applied to the defendant in the case announcing the rule, evenhanded justice
13  requires that it be applied retroactively to all who are similarly situated."
14  Teague v. Lane, supra, 489 U.S. 288, 300, 109 S. Ct. 1061, 1070.

15  Some Courts have relied in In re Dannenberg, supra, 34 Cal. 4th 1061 to denied

16  the petitions of fellow inmates on parole decisions issues. See In re DeLuna (2005)

17  24 Cal. Rptr.3d 643, 649; Sass v. Cal. Bd. of Prison Terms, 376 F. Supp.2d 975,

18  981-983 (E.D. Cal. 2005). Therfore, it is assumed this Court is going to rely in

19  Dannenberg to deny petitioner the relief he is seeking.

20  However, because in Dannenberg the California Supreme Court changed the Indetermi-

21  nate Sentence Law (ISL) it cannot be applied retroactively without violating the

22  Retroactive Law. See Bouie v. City of Columbia, 378 U.S. 347, 84 S. CT. 1697 (1964);

23  and Rogers v. Tennessee, 532 U.S. 451, 121 S. CT. 1693 (2001).

24  Relying in Dannenberg to deny petitioner the relief he seeks is contrary to the

25  clearly established law by the United States Supreme Court in that is has required

26  the Courts to consider the petitions under the law that was in effect at the time

27  the petitioner committed the offense. See Teague v. Lane, supra, 489 U.S. 288,

28  305-308, 109 S. CT. 1061, 1073-1074.

1    In In re Danneberg, supra, 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417, 440, 443, 104

2    P.3d 783 the California Supreme Court determined that the Board is not required to

3    refer to its sentencing matrices or to compare other crimes of the same type in

4    deciding whether a prisoner is suitable for a parole and whether the prisoner's

5    crime was "especially cruel" or "exceptionally callous." Rather, the Board may

6    characterize a murder as "particularly egregious'" if there is violence or

7    viciousness beyond what is "minimally necessary" for conviction. See also in In re

8    DeLuna, supra, 24 Cal. Rptr.3d 643, 649.

9    The above holding changed the law that was in effect at the time petitioner

10   committed the offense.

11   At the time petitioner committed the offense the Board was required to refer to

12   its sentencing matrices to find the inmate suitable for a parole release date. In

13   re Stanworth, 33 Cal.3d 176, 181-186, 187 Cal. Rptr. 783, 786-788 (Cal. 1982); In

14   re Seabock, 140 Cal. App.3d 29, 40, 189 Cal. Rptr. 310, 317, fn. 9 (1983); In re

15   Ramirez, 114 Cal. Rptr.2d 381, 397 (Cal. App. 1 Dist. 2001).

16   The decisions of the California Court of Appeals is the authority in the absence

17   of the California Supreme Court decision on the issue. Kolander v. Lawson, 461 U. S.

18   352, 103 S. Ct. 1855, fn. 6 (1983). Therefore, previous to the time the California

19   Supreme Court had construed Penal Code Section 3041 in Dannenberg, the decisions

20   of the California Court of Appeals could be the authority in parole decisions.

21   Under Stanworth it is required the Board to consider all the factors to find the

22   prisoner suitable for a parole release date and to set the base term according to

23   the time prescribed in the matrices and that only when the inmate was convicted of

24   first  degree murder and for a specific category of extremely serious offense the

25   Board could set the base term beyond the term authorized by the matrices. See also

26   In re Rosenkrantz, 29 Cal. 4th 616, 653-655, 682-684, 128 Cal. Rptr.2d 104, 137-138,

27   161-162 (Cal. 2002).

28

8

1    At the time petitioner committed the offense Penal Code Subsection 3041 (a)

2    required and it is still requiring that the Board to compare other crimes of the

3    same type in deciding whether a prisoner is suitable for release on parole. See

4    In re Seabock, supra, 140 Cal. App. 3d 29, 189 Cal. Rptr. 310, fn. 7.

5    The comparison of other crimes of the same type in deciding whether a prisoner

6    is suitable for release on parole was overruled by the California Supreme Court.

7    See In re Dannenberg, supra, 23 Cal. Rptr. 3d 417, at 443 and fn. 18.

8

9    At the time petitioner committed the offense Penal Code Subsection 3041 (a)

10    required and it is still requiring that one year previous to the inmate's Minimum

11    Eligible Parole Release Date (MEPRD) the Board shall meet with the inmate and

12    shall normally set his parole release date.

13    Even when Penal Code Subsection 3041 (a) didn't violate any constitution the

14    California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d 417, at 433–

15    434 overruled the requirements that the Board "shall normally set the prisoner's

16    release date at the initial parole suitability hearing."  It held that the Board

17    can denied to every prisoner our release date and obviously it has to be without

18    considering the requirement of Penal Code Subsection 3041 (a).

19    At the time petitioner committed the offense the Board could denied to prisoners

20    our release date only if the prisoner had committed the offense in an "especially

21    heinous, atrocious" or "cruel" manner. See Title 15 of CCR Sec. 2402 (c)(1) and

22    in In re Seabock, supra, 140 Cal. App.3d at 39, 189 Cal. Rptr. 310, 316, fn. 8.

23    In Dannenberg, the requirements that the Board must find the crime was committed

24    in an especially heinous, atrocious or in a cruel manner was changed by the Court

25    and it held that the Board may characterize a murder as "particularly egregious"

26    if there is violence or viciousness beyond what is "minimum necessary" for a

27    conviction. See In re Dannenberg, supra, 23 Cal. Rptr.3d 417, 440, 443; In re

28    DeLuna, supra, 24 Cal. Rptr.3d 643, 649.

1    No matter what are the circumstances of the commitment offense the Board in every

2    case finds evidence beyond the minimum necassary to establish the elements for

3    second degree murder and the Board is using that evidence to denied to every priso-

4    ner our release on parole for the rest of our natural life as the California Supreme

5    Court in Dannenberg directed the Board to do.

6    Therefore, in In re Dannenberg, supra, 34 Cal. 4th 1061 the California Supreme

7    Court changed the ISL in that the Board needs not longer consider all the factors

8    it used to consider to find the inmates suitable for a parole release date it only

9    needs to consider the commitment offense factor to deny the inmate's release from

10   custody; the Board no longer needs to consider Penal Code Sub. 3041 (a) and it only

11   needs to find minimum evidence in the commitment offense beyond the minimum evidence

12   necessary to establish the elements for second degree murder to increase the punish-

13   ment to a greater offense and deny to every prisoner our release from custody based

14   on the static commitment offense  circumstance only and for the rest of our natural

15   life.

16   The California Supreme Court's holding in In re Dannenberg is clearly an effort

17   of the Court to increase the punishment of second degree murder convictions to the

18   punishment of First Degree Murder convictions and the Court expressed its desire

19   to increase the punishment by directing the Board to increase the crimes of Second

20   Degree Murder to the crimes of first degree murder. See In re Danneberg, supra,

21   23 Cal. Rptr.3d 417, fn. 16.

22   THE WAY THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 CANNOT
23   BE APPLIED TO PETITIONER AND THE PRISONER SIMILARLY SITUATED WITHOUT VIOLATING
     THE RETROACTIVE DOCTRINE.
24

25   In violation of the Retroactive Doctrine and contrary to the clearly established

26   law by the United States Supreme Court in Bouie v. City of Columbia, 378 U.S. 347,

27   84 S. Ct. 1697 (1964); and Rogers v. Tennesse, 532 U.S. 451, 121 S. Ct. 1693 (2001)

28   the courts have relied on the unreasonable construction of Penal Code Section 3041

1    in In re Dannenberg to denied the  fellow inmates the relief they have sought.

2    And since once a new rule is applied to the defendant in the case announcing the

3    rule, evenhanded justice requires that it be applied retroactively to all who are

4    similarly situated, it applied to petitioner because petitioner are similarly

5    situated to Dannenberg. However, the application of the Dannenberg decision to

6    petitioner violates the retroactive doctrine and it is contrary to the clearly

7    established law by the United States Supreme Court.

8       In Bason v. Kentuckey, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986) the

9    Court modified a portion of Swaim v. Alabama, 380 U.S. 202, 85 S. Ct. 824, 13 L.Ed.2d

10   759 (1965) and the portion  that was modified could not be applied retroactively on

11   collateral review of convictions that became final before, Batson was announced.

12   See Teague v. Lane, supra, 489 U.S. 288, 294-295, 109 S..Ct. 1061, 1065-1067.

13

14      In Teague v. Lane, supra, 489 U.S. at 305-307, 109 S. Ct. at 1073 the Court made

15   it clear that habeas corpus petitions shall be adjudicated by applying the law that

16   was in effect at the time the prisoner was convicted.

17

18      For the foregoing reasons petitioner's petition shall be adjudicated by

19   applying the law that was in effect at the time he committed the offense rather

20   than adjudicating it under the Dannenberg holding and petitioner request his

21   petition be adjudicated by applying the law that was in effect when he committed

22   the offense and was convicted.

23

24

25

26

27

28

1                                        GROUND THREE

2

3       THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER

4       UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE

        TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS. 5TH, 6TH, AND 14TH AMEND.

5

6          In Title 15 of California Code of Regulations (CCR) Section 2402 are the

7       circumstances the Board shall consider to find prisoners unsuitable for a parole

8       release date or find them suitable.

9          In Title 15 of CCR 2402 (c) are the circumstances tending to show unsuitability.

10      CCR Sec. 2402 (c)(1). COMMITMENT OFFENSE. "The prisoner committed the offense in

11      an especially heinous, atrocious or cruel manner."

12      (A) Multiple victims were attacked, injured or killed in the same or separate

13          incidents.

14        The Board has found that there were two victims who were killed in the same

15      incident. See Exhibit "F" on pages 46-48.

16      However, petitioner was not present during killing of the second victim and the

17      prisoner so declared during the hearing. See Exhibit "F" on pages 30-40.

18        During his swear declaration petitioner's declaring that after the first victim

19      was killed he had left in one direction and his brother left in another direction.

20      That he eventually became aware through a friend that there was a second victim.

21      See petitioner's declaration at Exhibit "A" on pages 2-3.

22        Therefore, because petitioner was not present during the killing of the second

23      victim the board unreasonable has considered the killing of the second victim to

24      denied petitioner's release from costody and it cannot be some evidence to denied

25      him his release from custody.

26

27

28

                                               12

1   (B) "The offense was carried out in a dispassionate and calculated manner, such

2       as an execution-style murder."

3   The Board has found that the offense was carried out with a great amount of dis-

4  passion that it was calculated in that the prisoner kept the victim occupied in an

5  argument while his brother went into a tent to retrieve a machete to hit him with.

6  See Exhibit "F" on page 46.

7   In his declaration petitioner's declaring that he , his brother and other friends

8  were drinking celebrating the oncoming Ney Year that they were already drunk when

9  the victim and three other friends were coming from another farm to join them.

10  That before they arrived the victim shouted and petitioner's brother answered the

11  shout that everything was in a friendly manner. However, when the victim  and his

12  friends arrived where petitioner, his brother and other friends were, the victim in

13  an anger tone asked who had answered the shout. Petitioner's brother smiling answe-

14  red  he did. The victim then called names to petitioner's brother and tried to

15  physically attack him. Petitioner stepped on front of the victim trying to calm-

16  down him.  The victim was calmed down, but later he became very argumentative and

17  tried to physically attack petitioner's brother again. Petitioner again stepped on

18  front of the victim trying to again calm-down him. But this time the victim pulled

19  a knife and stabbed petitioner on the left forearm. Petitioner jumped backwards

20  and pulled his belt to defend himself from the thrusts of the victim who was trying

21  to stab petitioner again.

22  When petitioner's brother saw the victim had stabbed petitioner he retrieved a

23  machete to safe petitioner's life.  Petitioner and the victim engaged in a struggle

24  the victim trying to stab petitioner again and petitioner trying to take the knife

25  away from the victim.  Eventually with the help of his brother petitioner took

26  away the knife from the victim and stabbed him with it until the victim fell to the

27  ground.  See petitioner's declaration at Exhibit "A" on pages 2-3.

28

1    Therefore, the findings of the Board that the offense was carried out with

2    great amount of dispassion and that it was calculated is not supported by the

3    evidence.

4    "Dispassionate means 'free from emotion or prejudice; calm and impartial." In

5    re Rosenkrantz, 80 Cal. App. 4th 409, 95 Cal. Rptr.2d 279, fn. 13 (Cal. App. 2 Dist.

6    2000). N O RATIONAL PERSON COULD DESCRIBE THIS KILLING AS  CALM AND WITHOUT EMOTION.

7    Calculated means planned. In re Rosenkrantz, supra, at fn. 13.

8    A planned murder is a first degree murder. People v. Ceja, 4 Cal. 4th 1134, 1140,

9    17 Cal. Rptr.2d 375, 379 (Cal. 1993); People v. Proctor, 4 Cal. 4th 499, 528-529,

10   15 Cal. Rptr.2d 340, 355 (Cal. 1992).

11   Petitioner was not charged with first degree murder, he was not convicted of

12   first degree murder and no evidence support the elements of first degree murder

13   (deliberation and premeditation).  Therefore, the findings of the Board that peti-

14   tioner committed the offense with dispassion and in a calculated manner is not

15   supported by the evidence.  And the some evidence requirement to support the

16   denial of petitioner's release on parole is not on the record.

17

18   (C) "The victim was abused, defiled,   or mutilated during or after the offense."

19   The board found that the victim was abused, defiled, and mutilated during the

20   offense.

21   In support of this finding the board held:  "It should be noted that the victim

22   had nine  stab wounds to his shest and throat and no less than 25 wounds inflicted

23   by the machete on the victim's arms, back, and head. A left ear was severed. And

     the blows were hit with such tremendous force that there was massive hemorrhaging

24   due to the external lacerations to the carotid artery, and a stab wound severing

25   the victim's aorta.  The victim, therefore, was mutilated during the offense."

     See Exhibit "F" on pages 46-47.

26

27

28

14

1    "Mutilation is interpreted to mean "distinct acts, apart from the killing,

2    specially performed to mutilate the victim's body." Richmond v. Lewis, 501 U.S.

3    40, 45, 113 S. Ct. 528, 533 (1992). The Board has not showed any evidence to

4    support that the mutilation it alleges was a distinct act apart from the killing.

5        The injuries inflicted to the victim were inflicted during the battle in the heat

6    of the battle.  None of the injuries inflicted to the victim were inflicted in cold

7    blood.  Petitioner acted in self-defense and the injuries to the victim does not

8    support any kind of first degree murder described in Penal Code Section 189. In In

9    re Dannenberg, supra, 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417, fn. 16 the Court held

10   that the Board can increase the crimes of second degree murder to the crime of

11   first degree murder if the crime was committed with deliberation and premeditation.

12   However, petitioner's crime cannot be increased from second degree murder conviction

13   to the higher crime of first degree murder because there is not evidence of premedi-

14   tation and deliberation.  The Board has been considering this static factor for the

15   last 13-years and if once it was some evidence to denied petitioner his release from

16   custody after using it for the last 13-years to denied him his release on parole it

17   cannot longer be considered to denied his release on parole without violating the

18   Due Process Clause. Biggs v. Terhune, 334 F. 3d 910, 917 (9th Cir. 2003); In re

19   Rosenkrantz, 29 Cal. 4th 616, 683-684, 128 Cal. Rptr.2d 104, 161-162 (Cal. 2002).

20

21       (D) "The offense was carried out in a manner which demonstrates an exceptionally

22   callous disregard for human suffering."

23       The Board has found that the offense was carried out in a manner that showed a

24   total and a callous disregard for human suffering. See Exhibit "F" on page 47.

25       This appears to refer to something akin to torture or that the victim suffered

26   much more than that which would be inherent in any killing. In re Rosenkrantz,

27   supra, 80 Cal. App. 4th 409, 95 Cal. Rptr.2d 279, fn. 13.  There is not evidence

28   of that in this case.

15

1    The cruelty circumstance is limited to situations where the suffering of the

2    victim was intended by or foreseeable to the killer. Walton v. Arizona, 497 U.S.

3    639, 654, 110 S. Ct. 3047, 3058 (1990). What these cases show is that torture,

4    cruel, and suffering have the same meaning. Therefore, the Board has been conside-

5    ring this factor twice it considered cruel and callous disregard for human suffe-

6    ring.    Callous disregard for human suffering requires the victim be tortured in

7    an act distinct and apart from the act of the killing. The Board has not showed

8    the victim was tortured in an act distinct from the act of the killing or that

9    during the killing of the victim petitioner prolonged his death inorder to torture

10   the victim.   Therefore, there is not the some evidence requirement in the record

11   to support the findings of the Board that the offense was carried out in a manner

12   that showed a total callous disregard for human suffering.

13

14   (E) "The motive for the crime is inexplicable or very trivial in relation to the

15       offense."

16   The Board has found that the motive for the crime was extremely trivial in

17   relation to the offense. See Exhibit "F" on page 47.

18   Petitioner's unpremeditated offense resulted from provocation on the part of

19   the victim. Though the provocation does not provide petitioner a legal defense,

20   the circumstances are similar to those which provide self-defense.

21   The victim was argumentative and wanted physically assault petitioner's brother

22   because petitioner's brother had answered a shout to the victim. The victim was

23   calmed-down but eventually he became again very argumentative and again he tried

24   to physically assault petitioner's brother. Petitioner tried to calm-down the

25   victim but the victim pulled a knife and stabbed petitioner on his left forearm.

26   The fact that the victim had stabbed petitioner on his left forearm and was trying

27   to stab petitioner multiple times triggered the fight and the killing of the

28   victim.

16

1    To permit petitioner's motive to be used to deny him release would allow almost

2    any motive to be used to deny a prisoner release, making a mockery of the Legisla-

3    tive declaration that life prisoners are "normally" entitle to receive a release

4    date shortly before they first become eligible for parole. (Pen. Code Sec. 3041 (a).

5    In re Scott, 119 Cal. App. 4th 871, 894, 15 Cal. Rptr. 3d 32, 48 (2004).

6

7    For the foregoing reasons, the evidence does not show the presence of any of the

8    five factors the Board rested on in determining that petitioner committed his

9    offense "in an especially heinous, atrocious or cruel manner," and the evidence

10   does not show that the motive for the crime was extremely trivial in relation to

11   the offense.

12   CCR 2402 (c)(2). Previous Record of Violence. "The prisoner on previous occasions

13   inflicted or attempted to inflict serious injury on a victim, particularly if the
     prisoner demonstrated serious assaultive behavior at an early age."

14

15   Petitioner has not any previous record of violence. See Exhibit "F" on p. 15-16,

16   48.

17   CCR 2402 (c) (5) Psychological Factors. The prisoner has a lengthy history of

18   severe mental problems related to the offense.

19   Petitioner has not any mental problems related to the offense. See Psycholocal

20   Report at Exhibit "E".

21   CCR 2402 (c)(6). Institutional Behavior. The prisoner has engaged in serious

22   misconduct in prison or jail.

23   Petitioner has not engaged in any serious misconduct in prison or in jail. See

24   Exhibit "E" on page 3; Exhibit "F" on page 48.

25

26

27

28

1   Under Title 15 of CCR Section 2402 (d) are the circumstances tending to show

2   suitability.

3   (1) NO JUVENILE RECORD.

4       Petitioner has not juvenile record. See Exhibit "F" on p. 48.

5       CCR 2402 (d)(7). Understanding and Plans for future. The prisoner has made realis-

6   tic plans for release or has developed marketable skills that can be put to use

7   upon release.

8       The Panel thought petitioner has not a solid job offer. The panel further found

9   that petitioner does have good family support who is willing to set him up with

10  housing, transportation, food and clothing and with a job either here in the

11  United States or in Mexico when he be paroled. See Exhibit "F" on p. 49.

12

13      Contrary to the findings of the Board that petitioner has not solid job offer

14  petitioner does have solid job offers.

15      Petitioner completed vocational Paint and Decoration; Vocational Upholstery; and

16  he is a very good leatherworker. See Exhibit "C" and Exhibit "F" on pages 28, 50.

17      1. A relative of petitioner offers him a job in a Carpentry and in a Upholstery

18  factory. See Exhibit "B" on page 1.

19      2. A Petitioner's cousin offers petitioner a job delivering fruits in different

20  states of Mexico. See Exhibit "B" on page 2.

21      3. A petitioner's brother offers to petitioner house and job working in agricul-

22  ture in the State of Oaxaca, Mexico. See Exhibit "B" on page 3.

23      4. A petitioner's brother in law who lives in California offers to petitioner a

24  house to live in and economic help to start a small business. See Exhibit "B" p. 4.

25      5. A petitioner's niece offers him economic support to start a new life and start

26  a small Upholstery business in Chilapa De Diaz Oaxaca, Mexico. See Exh. "B" p. 5.

27      6. Two Petitioner's friends offer him jobs. See Exhibit "B" on pages 6-7.

28

1    Therefore, The Board unreasonable has found that petitioner does not have a

2    solid job offer.

3    While in prison petitioner has developed marketable skills in vocationals to put

4    in use upon his release from custody and he has job offers and housing to live in

5    upon his release on parole. The rule only requires developed job skill or an offer

6    of job and a house to live in upon his release, however, petitioner has both. See

7    CCR  Section 2402 (d)(7).

8    The Board has found that petitioner has not sufficiently participated in bene-

9    ficial Self-Help or Therapy Programs. See Exhibit "F" on page 48.

10    However, since 1988 petitioner has participated and he is a member of Alcoholics

11    Anonymous and he has participated in all Self-Help Programs available in this

12    Facility. See Exhibit "F" on page 50.

13

14    For the foregoing reasons the Board has not evidence to support its findings

15    that petitioner is not suitable for a parole release on parole and the Board

16    Capriciously and Arbitrarily has denied petitioner's release from custody in

17    violation of the Due Process Clause to the California and United States Consti-

18    tutions.

19

20    . For the foregoing reasons petitioner requests to this Court his immediate

21    release from custody.

22

23

24

25

26

27

28

1                                    GROUND FOUR

2

3    THE EXECUTIVE BRANCH OF GOVERNMENT HAS BREACHED THE PLEA AGREEMENT PETITIONER
     ENTERED WITH THE PROSECUTOR AND HAS INCREASED PETITIONER'S PUNISHMENT OF SECOND
4
     DEGREE MURDER TO A PUNISHMENT OF  FIRST DEGREE MURDER. 5TH, 6TH, AND 14TH Amend.
5

6      The United States Supreme Court has recognized different degrees of Criminal

7    Culpability. Mullaney v. Wilbur, 421 U.S. 684, 697-698, 95 S. Ct. 1881, 1889 (1975);

8     Solem v. Helm, 77 L.Ed.2d 637, 651 (1983); Apprendi v. New Yersey, 120 S. Ct. 2348,

9    2360 (2000); Hamlin v. Michigan, 501 U.S. 957, 996, 111 S. Ct. 2680, 2702 (1991).

10     Apparently the principle of different degrees of criminal culpability is a

11   universally established principle that has been recognized since 1215 when the Magna

12   Carta was written. See Solem v. Helm, supra, 77 L.Ed. at  645, fn. 9.

13     The State of California also recognize the principle of "different degrees of

14   criminal culpability".  The Legislature has enacted numerous statutes with different

15   degrees of criminal culpability.

16     Relev nt in this issue is Penal Code Section 189 for first degree murder. Sentence

17   are 25-years to life, life without the possibility of parole and death penalty.

18   Penal Code Section 187 for second degree murder. Sentence 15-years to life. See

19   Penal Code Section 190; People v. Robetson, 17 Cal. Rptr.3d 604, 610 (Cal. 2004);

20   Second Degree Murder and manslaughter are lesser included offenses of first degree

21   murder. People v. Stears, 92 Cal. Rptr. 69, 14 Cal. App.3d 178 (Cal. App. 2 Dist.

22   1971).

23     Lesser included offenses, mean lesser in terms of magnitude of punishment.

24    Schmuck v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L.Ed.2d 734 (1989);

25   Carter v. U.S. 530 U.S. 255, 147 L.Ed.2d 203, 120 S. Ct. 2159, fn. 2 (2000).

26     On April and May of 1984 petitioner pleaded guilty to second degree murder and

27   he was sentenced to 15-years to life plus one year for the use of deadly weapon.

28   See Exhibit "F" on page 1.

1   The United States Supreme Court has recognized that most life-term inmates in

2   United States have realistic expectation of parole. See Summer v. Shuman, 107

3   S. Ct. 2716, fn. 11 (1987).

4   Petitioner pleaded guilty with the expectation he will be deprived of his liberty

5   only to the extent established by the statutory law and the Board's regulations.

6   I.B.S. v. St Cyr, 533 U.S. 289, at 316, 321-323, 121 S. Ct. 2271, 2288, 2291-2292,

7   (2001); Bowen v. Hood, 202 F.3d 1211, at 1220-1222 (9th Cir. 2000); Magaña-Pizano

8   v. I.N.S. , 200 F.3d 603, 613 (9th Cir. 1999). However, the BPT has held petitio-

9   ner incarcerated beyond the term established by the statutes and regulations in

10   violation of the Due Process Clause to California and United States Constitutions.

11   Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. 2227, 2229 (1980).

12   When petitioner pleaded guilty to second degree murder nobody told him that by

13   pleading guilty to second degree murder eventually his crime will be increased to

14   the greater offense of first degree murder. At the time he pleaded guilty he re-

15   lied on the written law to plead guilty to second degree murder. The written law

16   at the time he committed the offense and pleaded guilty was that second degree

17   murder convictions were lesser included offenses of first degree murder. See

18   People v. Wickershaw, 32 Cal.3d 307, 326, 185 Cal.Rptr. 436, 446,(Cal. 1982)ñ

19   People v. Stearns, 92 Cal. Rptr. 69, 14 Cal. App. 3d 178 (Cal. App. 2 Dist. 1971).

20   And the Matrix for the base term of second degree murder was: Minimum Term

21   10-years and Maximum Term 21-years. See CCR Section 2403 (c).

22   In the Matrix for the base term the credits petitioner has earned during two

23   decades under CCR 2410 are not included.

24   Without providing petitioner with the credits he is entitle he has served the

25   Maximum Term for second degree murder (21-years) according to the Matrix for the

26   base term.

27   Now, petitioner is serving a punishment of first degree murder conviction.

28   According to the Matrix for the base term for first degree murder conviction.

1    The government of California has breached the plea agreement petitioner entered

2    with the prosecutor because petitioner already served the maximum term for secon

3    degree murder and now the government is punishing him with the punishment of the

4    greater offense of first degree murder.

5    "Plea agreements are contractual in nature and are measured by contractual law

6    standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003); United States v.

7    Anderson, 970 F.2d 602, 606 (9th Cir. 1992); People v. Shepard, 169 Cal. App.3d

8    580, 586, 215 Cal. Rptr. 401, 405 (1985); People v. Collins, 45 Cal. App. 4th 849,

9    869, 53 Cal. Rptr.2d 367, 378 (1996).

10    The Government is held "to the literal terms of the agreement." United States v. Baker,

11    25 F.3d 1452, 1458 (9th Cir. 1994); U.S. v. Schuman, 127 F.3d 815, 818 (9th Cir. 1997).

12    "Well established is the rule that the people will be held strictly to the terms of plea bargain made

13    with a criminally accused." People v. Nelson, 239 Cal. Rptr. 287, 289, 194 Cal. App.3d 77, 79 (Cal.

14    App. 1 Dist. 1987); In re Troglin, 51 Cal. App.3d 434, 438, 124 Cal. Rptr. 234, 237 (1975).

15    "When either the prosecution or the defendant is deprived of benefits for which

16    it has bargained, corresponding relief will lie from concessions made." People v.

17    Collins, 21 Cal.3d 208, 214, 145 Cal. Rptr. 686, 689 (Cal. 1978); People v. Collins,

18    supra, 45 Cal. App. 4th 849, 863, 53 Cal. Rptr.2d 367, 374.

19    The BPT is a party to the prosecutor's plea agreement. Therefore, the Board is

20    bound by the promise of the District Attorney. United States v. Anderson, supra,

21    970 F.2d 602, 605, fn. 5.

22    Also it is established that the State cannot with one hand give a benefit and

23    with the other take it away. Bowen v. Hood, supra, 202 F.3d at 1223; People v.

24    Harvey, 25 Cal.3d 754, 758, 159 Cal. Rptr. 696, 698-699 (Cal. 1979).

25    The Constitution does not take with one hand what it gives with the other.

26    Gideon v. Wainwright, 372 U.S. 339, 83 S. Ct. 792 (1963); Texas v. Cobb, 121 S.

27    Ct. 1335, 1347 (2001).

28

1    The Government of California with one hand (the prosecution) convict defendants

2    of second degree murder and with the other hand ( The Board of Prison Terms) it

3    increases the punishment of second degree murder convictions to the punishment

4    imposed on first degree murder convictions.

5    "When a plea rest in any significant degree on a promise or agreement of the

6    prosecutor, so that it can be said to be part of the inducement or consideration,

7    such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S.

8    Ct. 495, 499, 30 L.Ed.2d 427 (1971); United States v. Anderson, supra, 970 F.2d

9    602, 607; People v. Kaanehe, 19 Cal.3d 1, 13, 136 Cal. Rptr. 409, 417 (1977);

10    In re Jermine B., 69 Cal. App.4th 634, 639, 81 Cal. Rptr.2d 734, 737 (1999).

11        PETITIONER CARRIED OUT HIS PART OF THE PLEA BARGAIN.

12    "It is clear from Santobello ... that due respect for integrity of plea

13    bargains demands that once a defendant has carried out his part of the bargain the

14    government must fulfill its part." Brown v. Poole, supra, 337 F.3d 1155, 1159.

15    According to the Matrix petitioner already served the Maximum Term for the crime

16    he committed second degree murder; While in prison petitioner has developed marketa-

17    ble skills to put on use upon his release from custody; petitioner also has realis-

18    tic plans upon his release on parole and petitioner has not prior criminal record

19    and neither he has engaged in serious misconduct after he was convicted on the

20    current offense.  Therefore, petitioner has carried out his part of the plea

21    agreement and the Government of California shall be ordered to comply with its part

22    and release petitioner from custody.

23    The United States Supreme Court requires the courts to draw lines between the

24    sentences when the crimes are divided into degrees. Solem v. Helm, supra,

25    77 L.Ed.2d at 652-653.

26    The California Courts didn't draw lines between the sentences of the crimes

27    which are divided into degrees, but the Legislature commanded the BPT to draw those

28    lines. Penal Code Section 3041 (a).

1    The BPT drew lines between the sentences when the crime is divided into degrees.

2    The lines are the Matrices to set the base term. Relevant to this issue are two

3    of them. See Title 15 of CCR 2403 (b) and (c). The Matrices are condified guide-

4    lines. In re Stanworth, 33 Cal.3d 176, 181-184, 187 Cal.Rptr. 783, 786-788 (1982).

5    Because the Matrices are codified guidelines they cannot be hollow guidelines they

6    mean something. Carter v. U.S., 530 U.S. 255, 262, 120 S. Ct. 2159, 2165 (2000).

7    Because petitioner has been incarcerated since April 4, 1984 he has served the

8    Maximum Term established by the Matrix for the base term (21-years).

9    The Board has not pointed to any evidence to hold petitioner incarcerated beyond

10   the time established in the Matrix for the base term of second degree murder.

11   Petitioner is entitle to credits under CCR 2410. By providing petitioner with

12   the credits he is entitle he has served about 28-years in custody. This a term

13   equivalent to a term of first degree murder convictions. See CCR 2403 (b).

14   Under the clearly established law by the United States Supreme Court the punish-

15   ment of second degree murder conviction cannot be increased to the punishment of

16   first degree murder crime because it violates the 5th, 6th, and 14th Amendments.

17   It violates petitioner's right right of notice of the information of every essential

18   elements for first degree murder offense. Russell v. United States, 369 U.S. 749,

19   765, 8 L.Ed.2d 240, 251 (1962); Almendarz-Torres v. United States, 523 U.S. 224,

20   228, 118 S. Ct. 1219, 1223, 140 L.Ed.2d 350 (1998); It violates petitioner's right

21   to be informed about the nature of the charge against him. Henderson v. Morgan, 426

22   U.S. 637, 645, 49 L.Ed.2d 108, 114 (1976); It violates petitioner's right to be

23   find guilty in a jury trial of first degree murder beyond a reasonable doubt.

24   Apprendi v. New Yersey, 120 S. Ct. 2348, 2356-2357 (2000) and by increasing peti-

25   tioner's punishment the government of California has breached the plea agreement

26   petitioner entered with the prosecutor. Santobello v. New York, supra, 404 U.S. at

27   262, 92 S. Ct. 445, 30 L.Ed.2d 427.

28   For the foregoing reasons petitioner requests his immediate release from custody.

GROUND FIVE

BECAUSE THE DIVISION OF CRIMES INTO DEGREES CONSTITUTES AN EXCLUSIVE LEGISLATIVE FUNCTION NEITHER THE STATE COURTS NOR ANYBODY WITHIN THE EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION TO INCREASE PETITIONER"S PUNISHMENT OF SECOND DEGREE MURDER TO THE PUNISHMENT OF THE GREATER OFFENSE OF FIRST DEGREE MURDER.

The increasing of the punishment to that of a higher crime violates the Due Process Clause to the California and United States Constitutions. 5th, 6th, and 14th Amendments.

The division of a crime into degrees constitutes ans exclusive Legislative function. People v. Bright, 12 Cal. 4th 652, 669-670, 49 Cal. Rptr.2d 732, 743 (Cal. 1996).

In California second degree murder is a lesser included offense of first degree murder. People v. Bradford, 15 CaL. 4th 1229, 1344, 65 Cal. Rptr.2d 145, 212; People v. Stearns, supra, 92 Cal. Rptr. 69, 14 Cal. App. 3d 178.

Lesser included offenses mean lesser in terms of magnitude of punishment. Schmuck v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L.Ed.2d 734 (1989); Carter v. U.S., 530 U.S. 255, 147 L. Ed.2d 203, 120 S. Ct. 2159, fn. 2 (2000).

The defendant cannot be punished for a higher degree of the crime than the degree specified. People v. Mikhail, 13 Cal. App. 4th 846, 856, 16 Cal. Rptr.2d 641, 647, (Cal. App. 4 Dist. 1993); Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. at 2229; Whalen v. United States, 445 U.S. 684, 100 S. Ct. 1432, fn. 4 (1980).

It is the function of the Legislature Branch to define crimes and prescribe punishments. In re Lynch, 8 Cal. 3d 410, 414, 105 Cal. Rptr. 217, 219 (1973); Manduley v. Superior Court, 27 Cal. 4th 537, 552, 117 Cal. Rptr.2d 168, 180 (2004); Harmelin v. Michigan, 501 U.S. 957, 962, 964, 111 S. Ct. 2680, 2684-2686 (1991); Rummel v. Estelle, 445 U.S. 263, 274, 100 S. Ct. 1133, 1139, 63 L.Ed.2d 382 (1980).

1    Because petitioner already served a term in excess of the time required by the

2    Matrix for the Base Term for second degree murder convictions,  neither the

3    California Courts nor anybody within the executive branch of government have

4    jurisdiction to increase the punishment of second degree murder to the greater

5    punishment of first degree murder.

6    The Government of California has not pointed to any evidence to support the

7    increasing of petitioner's punishment of second degree murder to the higher

8    punishment of first degree murder.

9    Because the increasing of punishment is legislative in nature, the executive

10    branch of government lack jurisdiction to increase petitioner's punishment and

11    due to it petitioner requests his immediate release from custody because he

12    already paid to society for the crime he committed.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GROUND   SIX

**DUE** TO THE FACT THAT PETITIONER WAS NOT CHARGED WITH FIRST DEGREE MURDER
UNDER PENAL CODE 189, BUT HE WAS CHARGED WITH SECOND DEGREE MURDER UNDER
PENAL CODE SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY WITHIN THE
EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION TO INCREASE PETITIONER'S
PUNISHMENT OF SECOND DEGREE MURDER CONVICTION TO THE PUNISHMENT OF FIRST
DEGREE MURDER CONVICTION.

Petitioner was charged with second degree murder under Penal Code Section 187.
None of the essential elements of first degree murder were on the information.

The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d 417,
fn. 16 held that the Board can increase the crimes of second degree murder to the
crimes of first degree murder if the prisoner committed the offense by delibera-
tion and premeditation. However, this holding does not applied to petitioner
because he didn't commit the crime by deliveration and premeditation and because
he was not charged for the crime of first degree murder under Penal Code Section
189.

The United States Supreme Court has held:

"No person shall be required to answer for any of the higher crimes and the
Court cannot permit a defendant to be tried on charges that are not made in
the indictment or information against him." Stirone v. United States, 361 U.S.
212, 217, 4 L.Ed. 2d 252, 256, fn. 3 (1960).

"No principle of procedural due process is more clearly established than that
notice of the specific charge, and a chance to be heard in a trial of the issues
raised by that charge, if desired, are among the constitutional rights of
every accused in a criminal proceeding in all courts, state or federal. In re
Oliver, 333 U.S. 257, and cases there cited." Cole v. Arkansas, 333 U.S. 196,
201 (1948).

1   "The indictment or information shall be plain, concise and definitive

2   written statement of the essential facts constituting the offense charged."

    "The indictment or information shall state for each count the official or

3   customary citation of the statute, rule, regulation or other provision of the

4   law which the defendant is alleged therein to have violated." Russell v.

5   United States, 369 U.S. 749, 762-763, 8 L. Ed.2d 240, 250, 82 S. Ct. 1038 (1962);

    United States v. Bailey, 444 U.S. 394, 414, 100 S. Ct. 624, 62 L. Ed.2d 515

6   (1980).

7   "An indictment must set forth each element of the crime it charges."

8   Almendarez-Torres v. United States, 523 U.S. 224, 228, 118 S. Ct. 1219, 1223,

    140 L.Ed.2d 350 (1998); Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct.

9   2887, 2907, 41 L.Ed. 2d 590 (1974); Russell v. United States, supra, 369 U.S.

10  at 765, 8 L.Ed. 2d at 251.

11  "It is a settled rule that a bill of particulars cannot save an invalid

12  indictment and the trial court cannot amend an indictment or information."

    Russell v. United States, supra, 369 U.S. at 770-771, 8 L.Ed.2d 254-255.

13

14  It is well established that a plea of guilty cannot be voluntary in the sense

15  that it constitutes an intelligent admission that the accused committed the

16  offense unless the accused has received "real notice of the true nature of the

17  charge against him, the first and most universally recognized requirement of

18  due process." Smith v. O'Grady, 312 U.S. 329, 334, 61 S. Ct. 572, 574, 85 L.Ed.

19  859 (1941); Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2257, 49

20  L. Ed. 2d 108, 114 (1976); Marshall v. Lonberger, 459 U.S. 422, 436, 103 S. Ct.

21  843, 852 (1983).

22  Because petitioner was not informed about the nature of the charge against him

23  (First degree murder) Henderson v. Morgan, supra, 426 U.S. 637, 96 S. Ct. 2253,

24  49 L.Ed. 2d 108, 114, fn. 13 the State of California is without jurisdiction to

25  increase his punishment of second degree murder to a punishment of first degree

26  murder.

27

28

1    The increasing of petitioner's punishment also violates Apprendi v. New Yersey,

2    120 S. Ct. 2348, 2355 (2000); Blakely v. Washington, 124 S. Ct. 2531 (2004) that

3    under the due process clause of the Fifth Amendment and the notice and jury

4    trial guarantees of the Sixth Amendment any fact that increases the maximum

5    penalty for a crime must be charged in the indictment, submitted to the jury,

6    and proven beyond a reasonable doubt." "The Fourteenth Amendment commands the

7    same answer in this case involving a State Statute."

8    The increasing of petitioner's punishment violates the statutory law Penal

9    Code Section 1192.1 which hold that when a defendant pleads guilty of a crime

10   divided into degrees he will not be punished for a higher degree of the crime

11   than the crime he was convicted and the increasing of petitioner's punishment

12   violates the regulatory law which requires the inmates to serve a Minimum Term

13   of ten years and a Maximum Term of 21 years for a second degree murder conviction;

14   and the increasing of petitioner's punishment is contrary to the clearly establi-

15   shed law by the United States Supreme Court in that it has held that "no person

16   shall be required to answer for any of the higher crimes and the Court cannot

17   permit a defendant to be tried in a charges that are not  charged on the

18   indictment or information against him." Stirone v. United States, 361 U.S. 212,

19   217, 4 L.Ed.2d 252, 256, fn. 3 (1960).

20

21   Because petitioner has been punished in excess of the time prescribed by the

22   statutory, and regulatory laws in violation of the Due Process Clause to the

23   California and United States Constitutions, 5th, 6th and 14th Amendments, he

24   requests his immediate release from prison.

25    because petitioner was not charged with first degree murder and the essential

26   elements for first degree murder were not on the information and he was not

27   convicted of first degree murder  and he was not informed about the nature of

28   the charges the State lack jurusdiction to increase his punishment.

GROUND SEVEN

**WHEN** THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT
MISAPPLIED IT'S OWN LAW AND CONSTRUED IT IN CONTRAVENTION OF THE CLEARLY
ESTABLISHED LAW BY THE UNITED STATES SUPREME COURT AND IN VIOLATION OF
THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

When the California Supreme Court construed Penal Code Section 3041 it misap-

plied its own law and "When the State misapplied its own law it creates a pro-

tected liberty interest reviewable in Habeas Corpus Petition." Hicks v. Oklahoma,

supra, 447 U.S. 343, 346; Ballard v. Estelle, 937 F.2d 453, 456 (9th Cir. 1991).

In Dannenberg, 34 Cal. 4th 1061 the California Supreme Court construed Penal

Code Section 3041 in a way to evade consideration of constitutional rights by

federal courts of Parole Suitability Decisions. See Sass v. Cal. Bd. of Prison

Terms, supra, 376 F. Supp. 2d 975.

"Federal Courts may not second-guess the State's construction of its own
state law unless "it appears that its interpretation is an obvious subterfuge
to evade consideration of federal issue." Mullaney v. Wilbur, 421 U.S. 684,
691, 95 S. Ct. 1881, fn. 11, 44 L. Ed.2d 508 (1975); Rogers v. Tennessee,
532 U.S. 451, 457, 121 S. Ct. 1693, 149 L.Ed. 2d 697 (2001); Hubbart v.
Knapp, 379 F.3d 773, 780 (9th Cir. 2004).

Because in Dannenberg the California Supreme Court construed Penal Code Section

3041 in a way to evade consideration of constitutional rights by Federal Courts

in Parole Suitability Decisions the construction of Penal Code Section 3041 is

reviewable by the Federal Courts.

The United States Supreme Court further has held that "When a prison regulation

or practice offends a fundamental constitutional guarantee, federal Courts will

discharge their duty to protect constitutional rights." (Johnson v. Avery, 393

U.S. 483, 486, 89 S. Ct. 747, 749, 21 L.Ed. 2d 718 (1969); Procunier v. Martinez,

416 U.S. 396, 405-406, 94 S. Ct. 1800, 1807-1808 (1974).

1    In Dannenberg the Court stated that in 2001 the Legislature amended Penal

2    Code Section 3041 favorable to the prisoners who are serving life term. That the

3    2001 amendment to subsection 3041 (b) appears to assume the Board's present mode

4    of procedure. That the Legislature has not disturbed the Board's interpretation

5    of Section 3041. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 430-438.

6    Because the California Supreme Court assumed the Legislature wanted the Board's

7    present mode of procedure the Court construed Penal Code Section 3041 contrary to

8    the intent of the Legislature, contrary to the principles of statutory construc-

9    tion and contrary to the clearly established law by the United States Suprme Court.

10    The California Supreme Court held that the BPT can denied to every prisoner who

11    is serving 15-years to life terms their release on parole for the rest of their

12    natural lives based only on the commitment offense factor if the Board believe

13    the prisoners are risk to the public safety. See In re Dannenberg, supra, 23 Cal.

14    Rptr. 3d at 431-432, 439-440, 442-443.

15    Previous to the decision in Dannenberg the Board was denying parole release

16    dates to over than 99 percent of the inmates who were eligible for release on

17    parole and to those who the Board found suitable for a parole release date the

18    Governor cancelled their release date. See In re Dannenberg, 23 Cal. Rptr.3d at

19    448.

20    If previous to the Court's decision in Dannenberg, the Board and the Governor

21    were capriciously and arbitrarily denying almost to every inmate their release on

22    parole now when they don't have to consider the factors and the guidelines, but

23    only the commitment offense circumstance to find the inmates suitable for a parole

24    release date they are going to be denying release on parole in a more capricious

25    and arbitrary manner.

26

27

28

31

1  This holding of the California Supreme Court is contrary to the clearly
2  established law by the United States Supreme Court in that it has held:
3  "We have repeatedly hold that the Government's regulatory interest in community
4  safety can in appropriate circumstances, outweight an individual's liberty
   interest when the individual has been arrested for a specific category of
5  extremely serious offenses." That "There is nothing inherently unttainable
6  about a prediction of future criminal conduct." U.S. v. Salerno, 481 U.S. 739,
7  748-751, 109 S. Ct. 2095, 2102-2104 (1987) and cases cited therein.

8  It is a well established principle of statutory construction that a court in
9  constructing a statute it should give significance to every word, phrase,
10 sentence and part of an act to ascertain the intent of the Legislature so as to
11 effectuate the purpose of the law. People v. Black, 32 Cal. 3d 1, 5-6, 184 Cal.
12 Rptr. 454, 455-456, 648 P. 2d 104; People v. Craft, supra, 41 Cal. 3d 554, 559-
13 560, 224 Cal. Rptr. 626, 629.

14 The California Supreme Court in excess of its jurisdiction failed to give
15 significance to the words and phrases of Penal Code Subsection 3041 (a) as it is
16 required by the State's law when a statute is construed.

17 The words and phrases in Penal Code Subsection 3041 (a) cannot be regarded as
18 mere surplusage; They mean something. Carter v. U.S. 530 U.S. 255, 262, 120 S. Ct.
19 2159, 2165 (2000).

20 The Federal Constitution protect a prisoner when the State misapplied its own
21 law. The clearly established law by the United States Supreme Court hold:
22 "State statutes or regulations can create a right triggering due process protec-
23 tion to insure that the state created right is not arbitrarily abrogated."
24 "The touchstone of the due process is protection of individuals against arbitrary
25 action of government." (Dent v. West Virginia, 129 U.S. 114, 132,  9 S. Ct. 231,
26 233, 32 L. Ed. 623, (1889)." Wolff v. McDonnell, 418 U.S. 539, 557-558, 94 S. Ct.
27 2963, 2975-2976 (1974); Meachum v. Fano, 427 U.S. 215, 225-226, 96 S. Ct. 2532,
28 2539 (1976).

1   The Court failed to give significance to the command of the Legislature which

2   require that "One year prior to the prisoner's minimum term the Board shall

3   meet with the prisoner and shall normally set a parole release date as provided

4   in Penal Code Section 3041.5.  See In re Ramirez, 114 Cal. Rptr.2d 381, 397

5   (Cal. App. 1 Dist. 2001); Penal Code Subsection 3041 (a).

6   Penal Code Subsection 3041 (a) also command the Board to establish criteria for

7   the setting of Parole Release Dates amd in doing so shall consider the number of

8   victims of the crime for which the prisoner was sentenced and other factors in

9   mitigation and aggravation of the crime. In re Seabock, 140 Cal. App. 3d 29,

10  3738, 189 Cal. Rptr. 310, 315 (1983).

11  The Board established criteria for the setting of parole release dates. See

12  Title 15 of CCR Sections 2400 to 2411.

13  The Board established matrices to set the base term. Title 15 of CCR Sec. 2403.

14  The Matrices to set the base term are codified guidelines. In re Stanworth,

15  33 Cal. 3d 176, 182, 187 Cal. Rptr. 783, 787 (Cal. 1982); In re Seabock, supra,

16  140 Cal. App. 3d at 40, 189 Cal. Rptr. at 317, fn. 9.

17  However, the California Supreme Court directed the Board to disregard the

18  Matrices to set the base term. In re Dannenberg, 23 Cal. Rptr. at 317, and Fn. 15.

19  This holding of the California Supreme Court to eliminate from consideration

20  the Matrices to set the base term is contrary to the United States Supreme Court

21  requirement that when the crime is divided into degrees the Court shall draw lines

22  between the sentences. Solem v. Helm, 77 L. Ed.2d at 652-653.

23  In Penal Code Subsection 3041 (a) the State Legislature commanded the Board to

24  draw the lines between the sentences (the Matrices) as it is required by the

25  United States Supreme Court in Solem v. Helm. However, the California Supreme

26  Court in excess of its jurisdiction, contrary to the intent of the Legislature

27  and contrary to the clearly established law by the United States Suprme Court

28  overruled the Matrices.

33

1  Penal Code Subsection 3041 (a) and CCR 2401 require the Board to set the parole

2  release date in a manner that provides uniform term for offenses of similar

3  gravity and magnitude with respect to the threat to the public.

4  CCR Sections 2402 and 2403 also require the Board to consider the criteria to

5  find the inmates suitable for a parole release date and to set the base term.

6  The regulations are commanded by Penal Code Subsection 3041 (a).

7  By directing the Board to deny prisoners their release date based only on the

8  commitment offense factor the Court indirectly is directing the Board to disregard

9  the criteria to find the inmate suitable for a parole release date.

10  This holding of the California Supreme Court is contrary to the command of the

11  Legislature in Penal Code Subsection 3041 (a) that the Board shall establish

12  criteria to find the inmate suitable for a parole release date and to set the

13  base term at the initial parole suitability hearing.

14  The words and phrases in Penal Code Subsection 3041 (a) and the rules in

15  Title 15 of CCR Sections 2400 to 2411 cannot be regarded as mere surplusage;

16  They mean something. Carter v. U.S., supra, 530 U.S. 255, 262, 120 S. Ct. at 2165.

17  By disregarding the circumstances to find prisoners suitable for a parole

18  release date the Board is disregarding our good conduct in prison, the efforts we

19  have made to obtain our high school equivalent certificate (GED) to complete

20  vocationals and self-help programs and the credits we have earned during two

21  decades of participation in programs and the credits we have earned during two

22  decades of participation in the programs and the use of prison as a rehabilitative

23  tool has been undermined. Everything has been but empty formulas of words.

24  This holding of the Court is contrary to the clearly established law which hold:

25  "The prevalent modern philosophy of penology is that the punishment shall fit
   the offender and not merely the crime." (Williams v. Naw York, 337 U.S. 241,

26  247-248, 69 S. Ct. 1079, 1083-1084, 93 L.Ed. 1337 (1949)." United States v.

27  Grayson, 438 U.S. 41, 45, 98 S. Ct. 2110, 2113 (1978); In re MInnis, 7 Cal.3d

28  639, 644, 102 Cal. Rptr. 749, 752 (1972); In re Rodriguez, 14 Cal. 3d at 650.

1    The holding of the California Supreme Court in Dannenberg is also contrary to

2    the clearly established law by the United States Supreme Court which has held:

3    "The decision of parole turns on a "discretionary assesment of a multiplicity

4    of imponderables, entitling primarily what a man is and what he may become

5    rather than simply what he has done." Greenholtz v. Inmates of Nebraska Penal &

6    Corr. , 442 U.S. 1, 10, 99 S. Ct. 2100, 2105 (1979); Board of Pardons v. Allen,

7    482 U.S. 369, 107 S. Ct. 2415, fn. 5  (1987).

8

9    The Court further contrary to the law of statutory construction and in an

10   unreasonable manner considered the Legislative history of the ISL as well as the

11   circumstances of the enactment of the statute to determine the intent of the

12   Legislature. People v. Craft, supra, 41 Cal.3d at 560, 224 Cal. Rptr. at 629.

13   From 1975 to 1978 the Legislature made several amendments to the ISL. See

14   In re Williams, 53 Cal. App.3d 10, 15, 125 Cal. Rptr. 457, 460 (1975); In re

15   Dannenberg, supra, 23 Cal. Rptr.3d at 427, 435-437.

16   The amendments to the ISL were made because the Board in an arbitrary manner

17   was imposing excessive punishments to the prisoners. See In re Minnis, supra,

18   7 Cal. 3d 639, 102 Cal. Rptr. 749; In re Rodriguez, 14 Cal.3d 639, 122 CaL. Rptr.

19   552 (1975); In re Lynch, 8 Cal.3d 410, 105 Cal. Rptr. 217 (1972) In re Sturm,

20   11 Cal.3d 258, 113 Cal. Rptr. 361 (1974); In re Williams, supra, 53 Cal. App. 3d

21   10, 125 Cal. Rptr. 457. In In re Dannenberg,supra, 23 Cal. Rptr.3d 435-436, 441-

22   442 the California Supreme Court concedes that previous to the amendments to the

23   ISL the Board was arbitrarily and capriciously imposing excessive punishments.

24   In order to prevent the Board from arbitrarily and capriciously denied to

25   prisoners their release dates the Legislature commanded the Board to set criteria

26   in order to find the inmates suitable for a parole release date and guidelines to

27   set the base term. Penal Code Subsection 3041 (a).

28

35

1   However, the California Supreme Court no only failed to consider the history

2   of the ISL in a way to prevent the Board from arbitrarily applied the law (from

3   capriciously and arbitrarily denied us (prisoners) our release on parole) but

4   it construed the ISL in a way to encourage the Board to denied us our release

5   on parole in a more capriciously and arbitrarily manner than previous to the

6   amendments to the Indeterminate Sentence Law (ISL).

7   This holding of the California Supreme Court is contrary to the clearly

8   established law by the United States Supreme Court which has held that the

9   laws shall be enacted in a way to avoid arbitrary and capricious enforcement.

10  See Grayned v. City of Rockford, 408 U.S. 104, 108–109; Kolander v. Lawson,

11  461 U.S. 352, 357–358, 103 S. Ct. 1855, 1858; Smith v, Goguen, 415 U.S. 566,

12  574, 94 S. Ct. 1242, 1247–1248, 39 L. Ed. 2d 605 (1974).

13

14  For the foregoing reasons the construction of Penal Code Section 3041 in

15  In re Dannenberg, supra, 34 Cal. 4th 1061 shall be declared unconstitutional

16  and void because the construction of Penal Code Section 3041 is contrary to the

17  law of statutory construction, it is contrary to the Legislature's intent,

18  it violates the Due Process Clause to the California and United States

19  Constitutions and because it is in contrvention to the clearly established law

20  by the United States Supreme Court.

21

22

23

24

25

26

27

28

1                                    GROUND   EIGHT

2

3      THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY THAT
4      IT TURNED THE INDETERMINATE SENTENCE LAW INTO A VAGUE AND DISCRIMINATORY LAW
       IN VIOLATION OF THE ADA AND THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND
5      UNITED STATES CONSTITUTIONS.

6      The State's vague law is reviewable by the Federal Courts.

7      "Where the statute or regulation is challenged as vague because individuals
8      to whom it plainly applies simply cannot understand what is required of them
       and do not wish to forswear all activity arguably within the scope of the
9      vague terms abstention is not required." Procunier v. Martinez, 416 U.S. 396,
10     94 S. Ct. 1800, fn. 5 (1974).

11                                      "A"

12     In Dannenberg the Court held that inmates who believe their fonfine-
13     ments have become constitutionally excessive to take their claims to court and the
14     court will review them on proportionally grounds. Dannenberg, supra, 23 Cal. Rptr.3d
15     at 441-443. However, the Court didn't state how much time is proportionate for
16     second degree murder convictions (15-years to life sentences).

17     In Dannenberg the Court repeattedly stated that inmates sentenced for second
18     degree murder convictions are sentenced to serve life maximum terms. See In re
19     Dannenberg, supra, 23 Cal. Rptr.3d at 420-421, 429-432, 434, 436, 439.

20     Then how the 15-years to life sentences can be disproportionate when on the
21     Court's Judgment every second degree murder sentence is a natural life maximum
22     sentence?

23     The principle of gross disproportionality only exist on death penalty sentences.
24     Harmelin v. Michigan, 501 U.S. 957, 995, 111 S. Ct. 2680, 2701-2702 (1991). But
25     if it exist in life sentences it is applied only in the "exceedingly rare" and
26     "extreme" case. Lockyer v. Andrade, 538 U.S. 63, 73, 123 S. Ct. 1166, 1173 (2003);
27     Harmelin v. Michigan, supra, 501 U.S. 957, 063, 111 S. Ct. 2680, 2685.

28

                                       37

1    Therefore, under the principle of disproportionality the sentence of an inmate

2    who was sentenced to 15-years to life for second degree murder conviction will be

3    an exceedingly rare and extremely rare finding of disproportionality.

4    This holding of the California Supreme Court is contrary to the clearly establi-

5    shed law by the United States Supreme Court which has held:

6    "The Government's regulatory interest in community safety can, in appropriate

7    circumstances, outweight an individual's liberty interest when the individual
     has been arrested for a specific category of extremely serious offenses."

8    U.S. v. Salerno, supra, 481 U.S. 738, 748-750, 107 S. Ct. 2095, 2102-2104, and

9    cases cited therein.

10   The United States Supreme Court has held: "It would certainly be dangerous if

11   the Legislature could set a net large enough to catch all possible offenders,
     and leave it to the courts to step inside and say who could be rightfully

12   detained and who should be set at large, this would, to some extent, substitute

13   the judicial for the Legislative department of government." Kolander v. Lawson,

14   supra, 461 U.S. 352, 103 S. Ct. 1855, fn. 7; Smith v, Goguen, 415 U.S. 566,
     94 S. Ct. 1242, fn. 9 (1974).

15

16   The California Supreme Court did exactly that. The Court held that the BPT can

17   denied parole to every inmate only on the commitment offense factor and if the

18   inmate believe he has been retained beyond the constitution allows then to take

19   his claim to court and the court will review it on disproportionality grounds.

20   See In re Dannenberg, supra, 23 Cal. Rptr.3d at 441-443. *

21   "A Statute which either forbids or requires the doing of an act in terms so

22   vague that men of common intelligence must necessarily guess at its meaning and
     differs as to its application, violates the first essential of the Due Process

23   of Law." Smith v. Goguen, supra, 415 U.S. 566, 94 S. Ct. 1242, 39 L.Ed.2d 605,

24   fn. 8.

25   *  The Court didn't say how those fellow inmates who have the disability to lear
        high enough to present their claims to court can take their claims to court.
26      Therefore, Penal Code Section 3041 was also construed in a discriminatory manner
        and in violation of the ADA. The ADA apply to prisoners. See Pennsylvania Dept.
27      of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998);
        42 U.S.C Section 12132. In that only the wealthy and the educated can take their
28      parole decision claims to court.

1     The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d at 421,

2     443 held that the Board can denied to prisoners our release on parole for the rest

3     of our natural life only by pointing to some evidence that the particular circums-

4     tances of the crime-circumstances beyond the minimum elements of the conviction-

5     indicate exceptional callousness and cruelty with trivial provocation, and that

6     those suggested the inmate remains a danger to public safety.

7     The Court didn't say what are the circumstances beyond the minimum elements of

8     the prisoner's conviction the Board can consider to denied a prisoner his release

9     on parole for the rest of his natural life.

10    The Courts have recognized that all second degree murder by their nature involve

11    a disregard for the life of another. In re Rosenkrantz, 80 Cal. App. 4th 409,

12    95 Cal. Rptr.2d 279, fn. 13 (Cal. App. 2 Dist. 2000); All second degree murders

13    by definition involve some callousness—i.e., lack of emotion or sympathy, emotional

14    insensitivity, indifference to the feelings and suffering of others." In re Scott,

15    119 Cal. App. 4th 871, 891, 15 Cal. Rptr.3d 32, 45 (2004); A Florida Court also

16    recognize that all killings are atrocious." Proffitt v. Florida, 428 U.S. 242, 255,

17    96 S.Ct. 2960, 2968 (1976); "An ordinary person could honesly believe that every

18    unjustified, intentional taking of human life is "especially heinously, outrageously

19    or wantonly vile, horrible, inhuman." Godfrey v. Georgia, 442 U.S. 420, 428–429,

20    100 S. Ct. 1759, 1764–1765; Maynard v. Cartwright, 486 U.S. 356, 364, 108 S. Ct.1853,

21    1859 (1988).

22    "The minimal elements of the crime are symply that a person dies at the hands of

23    another with the perpetrator exhibiting the requisite intent. Any fact in addition

24    to this could be one viewed as "more than minimally necessary to convict." For

       example, one BPT panel may believe that use of a knife per se causes undue suffering;

25    another may believe use of any weapon where death is not instantaneous, probably

26    the vast majority of murders, exhibits callousness. A conclusion can easily be

27    reached by those who want to claim that the facts of any murder are such that they

       prove more than those facts minimally necessary for a conviction. There can be no

28    doubt that Dannenberg gives carte blanche to the BPT to issue a mere characteriza-

39

1    tion of the crime to support a denial of parole."

2

3    For the members of the Board no matter how or the murder occurred or the motive

4    for it the Board always find that the prisoner committed the crime in an especially

5    cruel or callous manner, and that the crime was carried out in a way that "demons-

6    trates an exceptionally callous disregard for human suffering" and that the motive

7    for the crime "was inexplicable or very trivial in relation to the offense." That

8    the prisoner needs therapy in order to face, discuss, understand and cope with

9    stress in a non-destructive manner. That until progress is made  the  prisoner

10   continues to be  unpredictable and a threat to others. See In re Dannenberg, supra,

11   23 Cal. Rptr.3d at 423-424; In re Ramirez, 114 Cal. Rptr.2d 381, 388; In re

12   Rosenkrantz, 80 Cal. App. 4th 409, 418, 95 Cal. Rptr.2d 279, 286, fn. 10, and

13   footnotes 10 and 14; In re Scott, 199 Cal. App. 4th 871, 883, 889, 15 Cal. Rptr.3d

14   at 39, 44.

15   Therefore, no matter what are the circumstances of the crime, the evidence shows,

16   that the Board always had found and it will find in every murder crime-circumstances

17   beyond the minimum elements of the crime—and that the prisoner committed the crime

18   with exceptionally callousness and cruelty with trivial provocation.

19   Therefore, without guidelines to find the inmate suitable for a parole release

20   date and to set the base term the ISL is vague and the construction of Penal Code

21   Section 3041 in In re Dannenberg, 34 Cal. 4th 1061 shall be declared unconstitutio-

22   nal and void by this court because it violates petitioner's Due Process Rights to

23   the California and United States Constitutions. 5th, 6th, and 14th Amendments.

24

25   Due to the fact that petitioner was not charged with first degree murder under

26   Penal Code Section 189 neither the Courts nor anybody within the executive branch

27   of government have jurisdiction to increase petitioner's conviction of second

28   degree murder to a conviction of first degree murder in that the elements of first

1   degree murder were not on the information. Stirone v. United States, 361 U.S. 212,

2   217, 4 L.Ed.2d 252, 256, fn. 3 (1960); U. S. v. Hooker, 841 F.2d 1225, 1231-1232

3   (4th Cir. 1988); and were not proved beyond a reasonable doubt. In re Winship,

4   supra, 397 U.S. 358, 364, 25 L.Ed.2d 368, 375, 90 S.Ct. 1068.

5     Therefore, because petitioner was not charged with first degree murder the

6   elements of a first degree murder cannot be considered to denied his release on

7   parole.  The consideration of the elements of first degree murder to denied

8   petitioner his release on parole also violates Apprendi v. New Yersey, 120 S. Ct.

9   2348, 2355 (2000); and Blakely v. Washington, 124 S. Ct. 2531 (2004) that "Under

10  the due process clause of the Fifth Amendment and the notice and jury trial

11  guarantees of the Sixth Amendment, any fact that increases the maximum penalty for

12  a crime must be charged in an indictment, submitted to the jury, and proven beyond

13  a reasonable doubt."

14  Then, if the elements of a first degree murder charge cannot be considered by the

15  Board to deny petitioner his release on parole, then what are the circumstances to

16  deny his release on parole for the rest of his natural life or to increase his

17  punishment of second degree murder conviction to a punishment of first degree

18  murder conviction?

19    The United States Supreme Court requires lines between the sentences when the

20  crimes are divided into degree. Solem v. Helm, supra, 77 L.Ed.2d at 652-653.

21    The United States Supreme Court further has held:

22  "If arbitrary and discriminatory enforcement is to be prevented laws must provide

23  explicit standards for those who apply them." Greyned v. City of Rockford, 408 U.
    S 104, 108-109; Kolander v. Lawson, supra, 461 U.S. 352, 357-358, 103 S. Ct. 1858.

24  "Although, the doctrine focuses both on actual notice to the citizens and

25  arbitrary enforcement, we have recognized recently that the more important

26  aspect of the vagueness doctrine "is not actual notice, but the other principle
    element of the doctrine--the requirement that the legislature establish minimal

27  guidelines to govern law enforcement." (Smith v. Goguen, 415 U.S. 566, 574,

28  94 S. Ct. 1242, 1247-1248, 39 L.Ed.2d 605 (1974).

1    "When the Legislature fails to provide such minimal guidelines, a criminal

2    statute may permit "a standarless sweep that allows policemen, prosecutors,

     and juries to pursue their personal predictions." Id., at 575, 94 S. Ct., at

3    1248.) Kolander v. Lawson, 461 U.S. at 538, 103 S. Ct. at 1858.

4    "One of the premises of the void for vagueness doctrine is that an excessively

5    vague statute promotes arbitrary and iscriminatory law enforcement by delegating

     (too much) power to the law-enforcement officers." Grayned v. City of Rockford,

6    408 U.S. 104, 108-109; Kilander v. Lawson, supra, 461 U.S. 352, 357, 103 S. Ct.

7    1855, 1858; Bear v. City of Wauwatosa,  716 F.2d 1117, 1124 (7th Cir. 1983);

8    United Beverage Co. v. Ind. Alcoholic Beverage, 760 F.2d 155, 158 (7th Cir. 1985).

9    The California Legislature commanded the BPT to establish criteria and guidelines

10   to find the inmates suitable for parole release dates and to set the base ter.

11   See Penal Code Subsection 3041 (a); and Title 15 of CCR Sections 2401, 2402, and

12   2403.

13   Therefore, the Legislature established or commanded the Board to establish the

14   guidelines required by the United States Supreme Court to avoid vagueness and to

15   prevent the government from capriciously and arbitrarily apply the law.

16   However, the California Supreme Court overruled most of Penal Code Subsection

17   3041 (a). (It only left intact the requirement that one year previous to the

18   inmate minimum term the Board consider the inmates for a parole release dates).

19   The Rest of it was overruled.  The Court overrruled the Matrices to set the base

20   term. See In re Dannenberg, supra, 23 Cal. Rptr.3d 417, 433, and fn. 15.

21   And by holding that the Board can denied to every prisoner our release on parole

22   based only on the commitment offense factor the Court impliedly is directing the

23   Board to disregard the criteria to find the prisoners suitable for a parole release

24   date.).

25   The Court further is directing the Board to increase second degree murder crimes

26   to first degree murder crimes. See In re Dannenberg, 23 Cal. Rptr.3d 417, fn. 16.

27

28

1    By directing the BPT to increase the crime the California Supreme Court is

2    directing the Board to resentence the Inmates who were convicted for Second Degree

3    Murder and increase their punishment even when nobody elected the BPT commissioners

4    as Sentencing Judges.

5    Previous to the decision in Dannenberg the Board was denying parole to over than

6    99 percent of the inmates who were suitable for a parole release date and to those

7    who the Board found suitable for a parole release date the Governor reversed the

8    suitability findings. See In re Dannenberg, 23 Cal. Rptr.3d at 448.

9    Therefore, if previous to the decision on Dannenberg—when the Board had to

10   consider the guidelines to find the inmate suitable for a parole release date—

11   the Board and the Governor were capricously and arbitrarily denying prisoners our

12   release on parole now when they don't have to consider the guidelines they are

13   denying release on parole in a more capricious and arbitrary manner.

14   The United States Supreme Court clearly established law require guidelines and

15   standards to prevent the government from arbitrarily applied the law, however, the

16   California Supreme Court not only failed to provide guidelines to avoid vagueness

17   and arbitrariness on parole decisions, but it eliminated the minimum guidelines that

18   were in effect which guidelines were commanded by the Legislature.

19

20   Therefore, the California Supreme Court turned the ISL into a vague law more

21   vague than the vague it was previous to the construction of Penal Code Section 3041

22   In re Dannenberg, supra, 34 Cal.4th 1061 and it construed Penal Code Section 3041

23   in a discriminatory manner in violation of the ADA and in violation of the Due

24   Process Clause to the California and United States Constitutions. 5th, 6th and 14th

25   Amendments.

26

27

28

1    For the foregoing reasons this Court shall declare the Decision in

2   In re Dannenberg, supra, 34 Cal. 4th 1061 unconstitutional on vagueness grounds

3   and in violation of the ADA and in violation of the Due Process Clause to the

4   California and United States Constitutions. 5th, 6th, and 14th Amendments.

5

6

7    I, Justino Vivar, swear under penalty of perjury that the foregoing is true

8   and correct.  Signed at Soledad, California on April 12, 2006.

9

10

11                                          _Justino Vivar_

12                                          Justino Vivar

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY MAIL

(C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                      ) SS.
COUNTY OF MONTEREY )

I, ___Justino Vivar_____, am a resident of the State of California, County of Monterey. I am over the age of 18 years and I    am/am not    a party to the within action.

My    business/residence    address is P.O. Box 689, Soledad, California, 93960-0689.

On ___April 12, 2006_____, 20 06_____, I served the foregoing:

___HABEAS CORPUS PETITION_____

_____

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:

CALIFORNIA COURT OF APPEALS
Fourth Appellate District
750 B St., No. 300
San Diego, California 92101-8189

DEPARTMENT OF JUSTICE
Office of Attorney General
110 W. A. St., No. 1100
P.O.BOX 85266
San Diego, Ca. 92186-5266

There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ___12th____ day of ___April_____, 20 06_____, at Soledad, California.

/S/ _Justino Vivar_____
                Justino Vivar